**In re M.J. SALES & DISTRIBUTING COMPANY, INC., Debtor.**

**Bankruptcy No. 81–B–20297.**
**Adv. No. 82 ADV 6166.**

United States Bankruptcy Court,
S.D. New York.

Dec. 16, 1982.

Hendler & Murray, P.C., New York City, for The Aetna Cas. & Sur. Co.

Barr & Faerber, Spring Valley, N.Y., for trustee.

Leven, Gouldin & Thompson, Binghamton, N.Y., for Therm-O-Ware Electric Corp.

Charles Leeds, New York City, for Bankers Trust Co.; Harvey Blecher, New York City, of counsel.

Herman E. Cooper, P.C., New York City, for Republic National Bank of New York.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

An anticipated problem, with shades of *In re Twist Cap, Inc.,* 1 B.R. 284 (Bkrtcy.D. Fla.1979) prompts the trustee in bankruptcy to join in the request of the plaintiff, Aetna Casualty & Surety Company, for an order staying litigation pending in the New York State Supreme Court. Aetna is presently being sued by Therm-O-Ware Electric Corporation on a bond assuring payment of any judgment won by Therm-O-Ware against the debtor, M.J. Sales & Distributing Company Inc. Therm-O-Ware now holds a judgment against the debtor. Meanwhile, Aetna commenced a third-party action in the state court against Bankers Trust Company and Republic National Bank. Bankers Trust issued an irrevocable letter of credit on behalf of the debtor and in favor of Aetna to protect Aetna's obligation under the bond that Aetna issued. The letter of credit was secured with a treasury bond posted by the debtor. The letter of credit was assigned to Republic National Bank, which is now liable thereunder.

The trustee in bankruptcy is concerned that if the judgment creditor, Therm-O-Ware, is allowed to proceed with its suit against Aetna in the state court action and successfully collects the proceeds from the bond issued by Aetna to cover the judgment that Therm-O-Ware obtained against the debtor, Aetna will then seek payment from the letter of credit which is secured by a treasury bond that is property of the debtor's estate. Thus, Republic's anticipated resort to the debtor's collateral to set off their liability under the letter of credit causes the trustee to raise the issues of voidable preference under 11 U.S.C. § 547 and post-petition transfers proscribed under 11 U.S.C. § 549.

## FACTS

1. A judgment by default in the amount of $25,323.12 was entered on July 25, 1979 in New York Supreme Court, Broome County, against M.J. Sales and Distributing Company, Inc. ("M.J. Sales"), the defendant in an action commenced by Therm-O-Ware Electric Corporation ("Therm-O-Ware").

2. By order to show cause dated August 10, 1979, M.J. Sales moved in the state court for an order vacating the default judgment. The relief sought was granted by an order dated September 25, 1979, on the condition that M.J. Sales file a bond with language guaranteeing payment if Therm-O-Ware were successful in prosecuting its action against M.J. Sales.

3. In compliance with the condition set forth in the state court order, the Aetna Casualty & Surety Company, ("Aetna"), the plaintiff in the instant action, issued on behalf of M.J. Sales an "open default" bond dated October 18, 1979 in the amount of $25,323.12 in favor of Therm-O-Ware as obligee. There is a November 13, 1979 Rider attached to and forming part of the bond which assures payment of any judgments against M.J. Sales.

4. As consideration and security for Aetna's issuance of the default bond, M.J. Sales obtained for the benefit of Aetna an irrevocable letter of credit in the amount of $25,234.00, dated October 16, 1979 from Bankers Trust Company ("Bankers Trust").

5. The terms of the letter of credit agreement provide in pertinent part that Bankers Trust will honor drafts drawn by Aetna upon the latter's certification that it has executed a bond agreement or undertaking as surety for M.J. Sales, and that in Aetna's sole judgment as surety, the funds represented by the draft are required for Aetna's protection.

6. The letter of credit was secured with a treasury bond posted by M.J. Sales.

7. On May 6, 1981, an involuntary Chapter 7 petition for relief was filed against M.J. Sales pursuant to 11 U.S.C. § 303. An order for relief was entered on May 27, 1981. The office of the U.S. Trustee appointed Harvey S. Barr to serve as interim trustee of the debtor's estate.

8. As a consequence of the entry of the order for relief, the pending state court action brought by Therm-O-Ware against M.J. Sales (for which the bond had been issued) was stayed pursuant to 11 U.S.C. § 362(a). The matter had not as yet proceeded to trial.

9. On October 20, 1981, Therm-O-Ware filed a complaint in the bankruptcy court to lift the automatic stay, seeking permission to continue its suit against the debtor in State Supreme Court. An order was entered on October 29, 1981 in the bankruptcy court permitting Therm-O-Ware to proceed, and also providing that the modification of the stay was without prejudice to the trustee to commence a proceeding to recover any preferential payments.

10. Aetna thereafter received a letter dated November 12, 1981, from the law firm of Cianciosi & Duffy, Esqs., attorneys of record for M.J. Sales in the state court action. The purpose of the letter was to advise Aetna that no further defense of M.J. Sales would be made, in light of the fact that an order for relief had been entered against M.J. Sales in the involuntary Chapter 7 bankruptcy court proceeding.

11. As the debtor was no longer represented by an attorney in the state court proceeding, and judgment against the debtor appeared likely, Aetna took measures to enforce the letter of credit. Aetna believed that the funds represented by the letter of credit would be necessary for Aetna's protection, since the impending judgment would trigger Aetna's liability under the bond. By letter dated November 30, 1981, Aetna wrote to Bankers Trust in accordance with the letter of credit agreement, presenting its sight draft in the amount of $25,234.00 and certifying that the funds represented by the draft were required for their protection in connection with the issuance of the bond on behalf of the debtor, M.J. Sales.

12. Thereafter, on or about December 14, 1981, Bankers Trust responded, informing Aetna that the letter of credit had been

sold to Republic National Bank ("Republic National") and that Republic National had assumed all liability under the letter of credit.

13. Upon an application made by the trustee, an order to show cause was entered in the bankruptcy court on December 21, 1981, which contained a temporary restraining order preventing Republic National from releasing any funds pursuant to the letter of credit.

14. On December 22, 1981 a judgment in the amount of $29,705.98 was entered in State Supreme Court, Broome County, in favor of Therm-O-Ware and against the debtor.

15. A hearing on the order to show cause was held on December 30, 1981. The bankruptcy court determined that the stay should continue, in order to allow the trustee or Republic National to institute an adversary proceeding to determine the rights and obligations of Aetna, Therm-O-Ware, Republic National and the trustee with respect to the letter of credit and the debtor's treasury bond, presently held by Republic National as security for the letter of credit.

16. Thereafter, on May 26, 1982, Therm-O-Ware commenced an action against Aetna in State Supreme Court, Broome County, seeking the recovery of $25,323.12 pursuant to the open default bond issued by Aetna on behalf of the debtor.

17. In that state action, Aetna asserted as affirmative defenses the pendency of the bankruptcy proceedings and the stay issued by this court on December 21, 1981 which continues to restrain Republic National from releasing any funds under the letter of credit.

18. In connection with the state court action brought against it by Therm-O-Ware, Aetna commenced a third-party action against Bankers Trust and Republic National, contending that they are liable to it under the letter of credit. The third-party defendants assert the bankruptcy court's stay as their defense to Aetna's complaint.

19. By notice of motion dated August 23, 1982 Therm-O-Ware moved for summary judgment against Aetna in the state court. The hearing on that motion was adjourned to permit Aetna to initiate the present adversary proceeding in the bankruptcy court so as to determine the rights and obligations of all the parties.

20. Aetna filed the complaint in the instant adversary proceeding on September 18, 1982. At that time, nearly one year had passed since the December 30, 1981 hearing in the bankruptcy court, at which time it was determined that the stay issued on December 21, 1981 should remain operative, pending the commencement of an adversary proceeding by the trustee or Republic National to determine the rights and obligations of all parties. Neither the trustee nor Republic National has ever commenced such a proceeding.

21. The relief requested by Aetna is the entry of an order staying Therm-O-Ware from prosecuting its state court action against Aetna, or alternatively, an order vacating the stay issued by this court on December 21, 1981 so as to permit Republic National to pay over the funds to Aetna pursuant to the sight draft presented to Republic National under the terms of the letter of credit.

## DISCUSSION

This case presents a four-step progression of events. The first step consists of the debtor's pledging collateral to obtain a letter of credit to support the Aetna bond in order to vacate Therm-O-Ware's July 25, 1979 default judgment. The second step involves Therm-O-Ware's state suit against Aetna to recover under the Aetna bond for its post-petition second judgment against the debtor. The third step concerns Aetna's resort to the letter of credit (for which Republic National is responsible) in order to be reimbursed for payments required under the bond. The fourth and final step encompasses the potential recourse that Republic National would have against the collateral pledged by the debtor as consideration for the issuance of the letter of credit.

**STEP ONE:** *Pledging Collateral To Vacate The Default Judgment*

■ The pre-petition conduct of the debtor that commenced the series of events in question consisted of the debtor's October, 1979 transfer of a treasury bond to Banker's Trust (subsequently assigned to Republic National) as security for the issuance of a letter of credit in favor of Aetna, as consideration for Aetna's furnishing a bond in order to vacate Therm-O-Ware's first judgment. The trustee seeks to avoid the transfer of the debtor's treasury bond pursuant to Code § 547(b)(4)(A) which proscribes a transfer of the debtor's property between non-insiders if made "within 90 days before the date of the filing of the petition." The debtor's pledge of the treasury bond occurred more than ninety days before the filing of the Chapter 7 petition and cannot be regarded as a voidable preference. Moreover, the pledge was substantially contemporaneous with the issuance of the letter of credit, as expressed in 11 U.S.C. § 547(c)(1), and occurred according to ordinary business terms not later than 45 days after the debtor incurred the debt to Aetna for the latter's issuance of the appeal bond, as excepted under 11 U.S.C. § 547(c)(2). See *In re Hart Ski Mfg. Co.,* 7 B.R. 465 (Bkrtcy.Minn.1980).

■ The ninety-day rule under 11 U.S.C. § 547(b) also applies with respect to the July 25, 1979 Therm-O-Ware default judgment. This default judgment was entered nearly two years before the Chapter 7 petition was filed. Hence, the entry of the judgment is not avoidable under 11 U.S.C. § 547(b). Absent such an avoidable judgment, the trustee is in no position to assert 11 U.S.C. § 547(d) as a weapon, since this section only permits the trustee to avoid transfers of the debtor's property that were made to reimburse a surety that furnished a bond to dissolve a judicial lien *that would have been avoidable under Code § 547(b).* As indicated above, the default judgment that was vacated by the filing of the Aetna bond was *not* avoidable under Code § 547(b); thus, § 547(d) does not lend support to the trustee's attempt to set aside the transfer of the treasury bond.

**STEP TWO:** *Therm-O-Ware's Suit On The Aetna Bond*

As a result of the October 18, 1979 bond and November 13, 1979 Rider in the amount of $25,323.12 that Aetna issued for the debtor's benefit, the debtor was able to vacate the original default judgment and judicial lien that Therm-O-Ware obtained against the debtor on July 25, 1979. The bond continued in effect after the involuntary petition against the debtor was filed on May 6, 1981, and is the subject of Therm-O-Ware's action against Aetna for payment on account of the post-petition judgment entered on December 22, 1981 that Therm-O-Ware obtained against the debtor. Therm-O-Ware's second judgment was entered after this court signed an order on October 29, 1981 permitting Therm-O-Ware's state court action against the debtor to proceed. Thus, two judgments were entered against the debtor by Therm-O-Ware; one was a pre-petition default judgment for $25,323.12, which was dissolved by the debtor's posting of the bond in question; the other is a post-petition judgment in the sum of $29,705.98, for which Aetna is presently being sued by Therm-O-Ware under the bond that Aetna issued.

The trustee argues that the intervening bankruptcy of the debtor prevents Therm-O-Ware from looking to the Aetna bond for satisfaction of a post-petition judgment, notwithstanding that this court previously lifted the automatic stay so as to allow Therm-O-Ware to proceed to judgment. The trustee reasons that Aetna is not obligated to pay the judgment because of the provisions of the Bankruptcy Code.

■ If Therm-O-Ware succeeds in its state court action against Aetna to recover under the bond with respect to its post-petition second judgment against the debtor, no property of the estate will be affected; Aetna's payment to Therm-O-Ware will not reduce any assets under the aegis of the trustee because Aetna would be paying out its own funds. Thus, 11 U.S.C. § 549(a), which permits a trustee to "avoid a transfer

No

of *property of the estate* ... that occurs after the commencement of the case" [Emphasis added] will not come into play.

The trustee cites 11 U.S.C. § 547(d) as a basis for challenging any payment that might be made to Therm-O-Ware under the Aetna bond to satisfy Therm-O-Ware's second judgment against the debtor. This section reads:

"(d) A trustee may avoid a transfer of property of the debtor transferred to secure reimbursement of a surety that furnished a bond or other obligation to dissolve a judicial lien that would have been avoidable by the trustee under subsection (b) of this section. The liability of such surety under such bond or obligation shall be discharged to the extent of the value of such property recovered by the trustee or the amount paid to the trustee."

Code § 547(d) does not prevent Aetna from using its own funds to pay Therm-O-Ware under the bond; that section prohibits only transfers of the *debtor's property.*

Therefore, 11 U.S.C. § 547(d) contemplates a transfer of the debtor's property that has been made "to *secure reimbursement of a surety* that furnished a bond ... to dissolve a judicial lien ....*" It is beyond comprehension how Aetna's payment of its own funds to Therm-O-Ware could be characterized as payment made "to secure reimbursement of a surety that furnished a bond ... to dissolve a judicial lien ...*"; for Aetna itself is the surety that issued the bond, and the payment would be made *to the creditor,* Therm-O-Ware. Therefore, Aetna's satisfaction of Therm-O-Ware's post-petition second judgment would not amount to a transfer of the debtor's property which is proscribed under 11 U.S.C. § 547(b).

Step two in this case is similar to the situation in *Matter of Stanndco Developers, Inc.,* 534 F.2d 1050 (2d Cir.1976) where a debtor obtained a letter of credit issued to a surety which posted a bond necessary to discharge a mechanics' lien. The Second Circuit Court of Appeals permitted the holder of the mechanics' lien to proceed with its suit in state court to establish the

validity of the discharged mechanics' lien because the lienor would obtain satisfaction by means of the undertaking that was substituted for the lien. The court said: (Pp. 1053–1054)

"Should Amadori succeed in establishing the prior validity of its now discharged mechanics' lien, execution of its judgment would not result in foreclosure of debtor's real estate but would rather be satisfied by means of the undertaking substituted in its place. Therefore, its suit is not one 'leading to the divestiture of the debtor's title' ... but is for the purpose of establishing the liability of the surety."

STEP THREE: *Aetna's Reimbursement By Letter of Credit*

Aetna will pay the judgment creditor, Therm-O-Ware, in accordance with the provisions of its bond only if Aetna will be appropriately reimbursed by means of the irrevocable letter of credit in its favor which the debtor caused Bankers Trust to issue. Therefore, the next step for consideration is whether any provisions under the Bankruptcy Code prevent payment to Aetna pursuant to the letter of credit issued by Bankers Trust, and for which Republic National stands liable by reason of acquisition and merger.

Originally it was thought that *In re Twist Cap, Inc.* 1 B.R. 284 (Bkrtcy.Fla.1979) stood for the flat proposition that the honoring of letters of credit obtained by a debtor for the benefit of an unsecured creditor would create a preference in favor of such creditor. However, a close reading of that case reveals that the court did not hold that if the letters of credit were honored, the beneficiary would receive a preference in violation of the bankruptcy laws. The court merely declared that a temporary restraining order should issue in order to preserve the status quo pending a determination on the merits. The court appeared to be influenced by the fact that the bank held collateral of the debtor to secure its obligations under the letters of credit. However, the diminution in the debtor's estate oc-

curred more than ninety days before the petition was filed, at the time when the collateral was pledged; not when the bank looked to its collateral for reimbursement in the post-petition period.

A bank honors a letter of credit and pays the beneficiary with its own funds, and not with assets belonging to the debtor who caused the letter of credit to be issued. Indeed, in accordance with *N.Y. Uniform Commercial Code* § 5–114, a letter of credit represents an irrevocable obligation by an issuing bank to pay the beneficiary in accordance with its terms, despite notification from the customer of fraud or other defenses against the beneficiary not apparent on the face of the letter of credit. In essence, a letter of credit is somewhat like a guaranty. There is no preference to the holder of a guaranty when paid by the guarantor, notwithstanding the bankruptcy of the obligor whose performance was guaranteed. *First National Bank v. Phalen,* 62 F.2d 21 (7th Cir.1932); *In re Zaferis Bros. & Co.,* 67 F.2d 140 (9th Cir.1933). This is so because no preference occurs when the payment depletes the assets of the guarantor and not those of the debtor. See *Newport Bank v. Herkimer Bank,* 225 U.S. 178, 32 S.Ct. 633, 56 L.Ed. 1042 (1912).

The case of *Westinghouse Credit Corp. v. Page,* 18 B.R. 713 (D.C.D.C.1982) supports the proposition that a letter of credit and its proceeds are not "property of the estate" within the meaning of 11 U.S.C. § 541. In that case, the District Court for the District of Columbia reversed a bankruptcy court order enjoining payment on a collateralized letter of credit. The bankruptcy court had concluded that payment of the letter of credit would be a post-petition transfer in violation of 11 U.S.C. § 549 and a transfer of assets in violation of the automatic stay under 11 U.S.C. § 362 that would severely jeopardize the reorganization of the debtors. The District Court found that the bank's honoring of the letter of credit for merchandise ordered by the debtors would not constitute a post-petition transfer of the debtors' assets in violation of 11 U.S.C. § 549 and said: (p. 716)

"The Bankruptcy Court also relied on 11 U.S.C. § 549 to support the grant of preliminary injunctive relief. That section bars a postpetition 'transfer of property' under various circumstances. Essentially for the reasons given above that cashing the letter of credit would not constitute an act to obtain possession of debtor's property, neither would cashing the letter of credit lead to a transfer of property. *The letter of credit and its proceeds represent property of the Bank, not the debtors.* Although funding of the letter of credit would give rise to a claim by the Bank against the debtors, it would not lead to a transfer of the debtors' property since, as discussed, enforcement of the Bank's claim is barred by section 362." [Emphasis added].

The argument addressed to the automatic stay under 11 U.S.C. § 362 was similarly rejected by the District Court in the following language: (Pp. 715, 716)

"With respect to 11 U.S.C. § 362a(3), cashing the letter of credit will not divest the estate of property since neither the letter of credit nor its proceeds are property of the estate under the Bankruptcy Code. Section 541 of 11 U.S.C. defines property of the estate as 'all legal or equitable interests of the debtor' (subject to various limitations not relevant in this case). In issuing the letter of credit the Bank entered into an independent contractual obligation to pay WCC out of its own assets. Although cashing the letter will immediately give rise to a claim by the Bank against the debtors pursuant to the latter's indemnification obligations, that claim will not divest the debtors of any property since any attempt to enforce that claim would be subject to an automatic stay pursuant to 11 U.S.C. § 362a(4)."

The District Court opined that the filing of a Chapter 11 petition should not delay the payment on a letter of credit since "the intended substitution of a bank for its less credit-worthy customer would be defeated." Moreover, the court expressed the importance of letters of credit in commercial

transactions and that if bankruptcy courts enjoined banks from honoring their letters of credit, "a letter of credit would become a dubious device for securing credit."

■ It is clear that the funds from which Republic National must honor the letter of credit do not constitute property of the estate. *In re Marine Distributors, Inc.,* 522 F.2d 791 (9th Cir.1975). Hence, there are no provisions under the Bankruptcy Code that would prevent payment to Aetna pursuant to the letter of credit in question.

STEP FOUR: *Republic's Recourse to Pledged Collateral Following Payment of Letter of Credit.*

After the judgment creditor, Therm-O-Ware, recovers under the Aetna bond, and Aetna is reimbursed by Republic National on the letter of credit originally issued by Bankers Trust and assumed by Republic National, the latter will naturally seek to enforce its claim against the treasury bond posted by the debtor to collateralize the letter of credit. This treasury bond is, by definition expressed in 11 U.S.C. § 541(a), property of the debtor's estate. Manifestly, this fourth step in the series of transactions in question represents the most critical aspect in this case. It is this final step that goes to the heart of the trustee's position.

■ There is no question that the judgment creditor, Therm-O-Ware, may not execute directly on property of the debtor's estate because actions to obtain possession of property of the estate are enjoined under 11 U.S.C. § 362(a)(3) and actions to perfect or enforce liens against such property are stayed under 11 U.S.C. § 362(a)(4). The trustee, therefore, contends that Therm-O-Ware should not be permitted to benefit indirectly from the debtor's pledge of the treasury bond. This indirect benefit will come about when Republic National looks to the treasury bond for satisfaction after paying Aetna under the letter of credit, which in turn permits Aetna to pay Therm-O-Ware under its bond. Thus, the trustee views the Aetna bond and the letter of credit as conduits for permitting Therm-O-Ware to do indirectly what it may not do

directly. This argument elides the point that Republic National is similarly prevented by the automatic stay as expressed in 11 U.S.C. § 362(a)(4), from recourse to the debtor's pledged treasury bond. Even a validly secured creditor must first seek relief from the automatic stay, as prescribed under 11 U.S.C. § 362(d) before such creditor may enforce its secured interest. See *Westinghouse Credit Corporation v. Page, supra* 715, 716, and footnote 4. However, this issue is not before the court.

The trustee regards Republic National's potential use of the debtor's pledged collateral as a setoff. However, 11 U.S.C. § 553(a) defines a setoff as an "offset of a mutual debt owing by such creditor to the debtor that arose before the commencement of the case ...." The concept of mutuality is also expressed in 11 U.S.C. § 362(a)(7) as a "setoff of any debt *owing to the debtor* that arose before the commencement of the case under this title against any claim against the debtor ...." [Emphasis added]. It is clear that Republic National's pre-petition obligation under the letter of credit in question is owed directly to Aetna and is not "owing to the debtor." Therefore, Republic National's post-petition claim against the debtor's pledged collateral resulting from its payment to Aetna on the letter of credit, does not form the basis for any setoff; Republic National's pre-petition obligation to Aetna does not share a mutual status with Republic National's post-petition claim against the debtor's pledged collateral.

■ Although the trustee focuses mainly on the theory of avoidable preferences under 11 U.S.C. § 547(b), which this court has rejected in the context of steps one, two and three, the scenario that the trustee actually finds objectionable is the satisfaction of Republic National's claim (for having to honor the letter of credit) by the post-petition recourse to the debtor's pledged treasury bond. This fourth step offends the trustee's perception that property of the estate should not be transferred after the commencement of the case. Conceptually the trustee is correct, because 11

# 616

U.S.C. § 549(a)(1) authorizes a trustee in bankruptcy to avoid a transfer of property of the estate "that occurs *after* the commencement of the case . . . ." [Emphasis added]. However, the prerequisite for avoidance is that *the transfer* must have occurred *after* the filing of the petition for relief. Republic National's proposed liquidation of the treasury bond is not a post-petition transfer of an interest in the debtor's property. In this case, the treasury bond was transferred by pledge to Republic National in October 1979, more than a year and one-half *before* this Chapter 7 case was commenced. By definition, 11 U.S.C. § 549 does not apply to pre-petition pledges. It is settled law that a pre-petition pledgee's secured interest, as in the case of all other pre-petition secured interests that are not invalidated by the Bankruptcy Code, remains unaffected by the subsequent bankruptcy case and that the trustee takes title subject to such secured interest. See *Liberty National Bank of Roanoke, Virginia v. Bear*, 265 U.S. 365, 44 S.Ct. 499, 68 L.Ed. 1057 (1923); *New York Credit Men's Adjustment Bureau v. Samuel Breiter & Co., Inc.*, 253 F.2d 675 (2d Cir.1958), and *Mason v. Citizens National Trust & Savings Bank*, 71 F.2d 246 at 248, 249 (9th Cir.1934).

■■■ If the trustee seeks a turnover to the debtor's estate of the debtor's treasury bond, pledged as collateral for the letter of credit and now held by Republic National, his request would be framed more properly within the context of Bankruptcy Code § 542(a). Under that section, a trustee may request a turnover of property of the debtor held by an entity, if the trustee wishes to use, sell or lease such property in a manner that would benefit the creditors of a debtor's estate. However, Code § 363(e) requires that on request of such entity that has an interest in the property proposed to be used, sold, or leased by the trustee, the court shall hold a hearing to determine what would constitute adequate protection for that entity. Moreover, § 363(b) requires a hearing concerning adequate protection if the trustee proposes to use, sell or lease property of the estate other than in the ordinary course of business. The furnishing of adequate protection may be necessary, since the entity may have to surrender property which is the source of protection for its interest or lien. Reference must also be made to 11 U.S.C. § 363(c) because the treasury bond pledged with Republic National constitutes cash collateral as defined under 11 U.S.C. § 363(a). Thus, the trustee does not have an unfettered right to the cash collateral held by Republic National; the trustee must satisfy the requirements delineated under 11 U.S.C. § 363(c)(2).

It must be noted, however, that the trustee has not as yet brought any action pursuant to Code § 542 or § 363 for a turnover of the treasury bond held by Republic National, and therefore, this issue is not presently before the court.

## CONCLUSIONS OF LAW

1. The trustee may not void as preferential the transfer of the debtor's treasury bond to Bankers Trust (Republic National) which occurred more than ninety days prior to the filing of the involuntary Chapter 7 petition, and therefore, is not within the purview of Code § 547(b)(4)(A), as noted in Step One above.

2. The trustee may not void the transfer of the debtor's treasury bond to Bankers Trust (Republic National) by asserting Code § 547(d), since the default judgment that was dissolved with the Aetna bond would not have been avoidable under § 547(b), as explained in Step One above.

3. Aetna's application for an order staying Therm-O-Ware's state court suit is denied, because Therm-O-Ware's collection under Aetna's bond would not affect any property interests of this estate, and would not be a voidable preference under Code § 547(d), as discussed in Step Two above.

4. Aetna's alternative request for an order annulling and vacating the stay issued by this court restraining Republic National from honoring the letter of credit to Aetna is granted. The letter of credit and its proceeds represent property of Republic National, not this estate. There are no

provisions of the Bankruptcy Code that would preclude payment to Aetna under the circumstances of this case, as noted in Step Three above.

5. Republic National's potential recourse to the collateral pledged by the debtor as reimbursement for its payment pursuant to the letter of credit, as discussed in Step Four above, is not now before the court.

SUBMIT ORDER ON NOTICE.