In re ILLINOIS–CALIFORNIA EX-
PRESS, INC., dba ICX, Debtor.

Warren D. BRAUCHER,
Trustee, Plaintiff,

v.

CONTINENTAL ILLINOIS NATIONAL
BANK AND TRUST COMPANY OF
CHICAGO, United Bank of Denver,
N.A., and Liberty Mutual Insurance
Company, Defendants.

Bankruptcy No. 84 B 01927 M.
Adv. No. 84 C 867.

United States Bankruptcy Court,
D. Colorado.

June 18, 1985.

Steven L. Zimmerman, Zimmerman & Schwartz, P.C., Denver, Colo., for plaintiff.

Alan Watkins and Jonathan A. Margolies, Sterling and Miller, P.C., Denver, Colo., for Liberty Mutual.

Charles E. Matheson and Stephen W. Seifert, Fairfield and Woods, Denver, Colo., for Continental Bank and United Bank of Denver, N.A.

## ORDER ON MOTIONS TO DISMISS COMPLAINT

PATRICIA ANN CLARK, Bankruptcy Judge.

The matters before the Court are the defendants' motions to dismiss the trustee's complaint. The trustee, on behalf of the debtor, Illinois-California Express, Inc. (ICX), filed a complaint alleging six counts for relief against the defendants, Continental Illinois National Bank and Trust Company of Chicago and United Bank of Denver (hereinafter called the Banks), and Liberty Mutual Insurance Company (hereinafter called Liberty Mutual). The counts are composed of the following allegations: (I) violation of the automatic stay, (II) breach of contract, (III) declaratory judgment, (IV) voidable preference, (V) post-petition transfers, and (VI) turnover. Counts I and II were directed solely against the Banks, Count III was filed against all three defendants and Counts IV through VI were directed against Liberty Mutual singularly. The Banks moved to dismiss Count I for failure to state a claim upon which relief can be granted and Counts II and III for lack of subject matter jurisdiction. Liberty Mutual has moved to dismiss Count III for lack of subject matter jurisdiction and Counts IV, V and VI for lack of jurisdiction over the property in controversy.

The facts in this matter are generally uncontroverted. The Banks entered into a loan credit agreement with ICX in February of 1977, then amended it in December of 1982. This credit agreement provided that the Banks issue letters of credit, secured by the property of ICX, for the benefit of Liberty Mutual. Liberty Mutual would draw on the letters of credit as necessary in order to pay loss and damage claims filed against ICX by third parties.

The letters of credit in favor of Liberty Mutual were all issued by the Banks prior to the filing by the debtor of the Chapter 11 proceeding. They bear various expiration dates and the Banks have honored all proper draws by Liberty Mutual whether before or after bankruptcy. The loan agreement between the Banks and the debtor provides that upon default by the debtor the Banks' obligation to make loans to the debtor shall immediately terminate and all liabilities shall become immediately due and payable. One event of default contained in the agreement is the insolvency or bankruptcy of the debtor. This provision forms the basis of the trustee's allegations in the complaint that the Banks cannot continue to honor draws under the letters of credit. The Banks contend that the

loan was made to the debtor when the letters of credit were issued and they have an obligation to honor all proper draws thereunder.

ICX filed a voluntary petition seeking protection under Chapter 11 of the Bankruptcy Code on April 25, 1984. On June 29, 1984, the case was converted to one under Chapter 7 of the Bankruptcy Code and Warren Braucher was appointed trustee. The trustee and the Banks entered into a stipulation for sale of collateral and for use of cash collateral on July 30, 1984. The stipulation allowed the trustee to liquidate the Banks' collateral and deposit the proceeds into an account at the United Bank of Denver. All funds in excess of the aggregate amount of $200,000 would then be paid to the Banks and applied toward payment of the indebtedness the Banks claimed to be due them. The stipulation received Court approval on August 6, 1984.

On March 8, 1985 this Court heard argument on the Banks' jurisdictional motion and reserved judgment pending the hearing on the motion to dismiss filed by Liberty Mutual. On April 30, 1985 the Court heard argument on Liberty Mutual's motion to dismiss. The Court will rule on both motions to dismiss in this opinion. The analysis includes consideration of each of the three defenses which form the basis of the motions to dismiss, beginning with the failure to state a claim, followed by lack of subject matter jurisdiction and finishing with lack of jurisdiction over particular property. Finally, a discussion of whether abstention is appropriate in this matter will be included since it is an issue attendant to those raised in the motions to dismiss. First, however, it is useful to review the law surrounding motions to dismiss under Federal Rule of Civil Procedure 12(b).

The purpose of motion to dismiss procedure is to pierce the pleadings and to assess proof in order to see whether there is a genuine need for trial. *Sansone v. Ocean Accident and Guarantee Corp.,* 228 F.Supp. 554 (E.D.La.1964). Yet, the Court's inquiry in a motion to dismiss under Rule 12(b) is limited. The Supreme Court described it as follows:

> For the purposes of a motion to dismiss, the material allegations of the complaint are taken as admitted. And, the complaint is to be liberally construed in favor of plaintiff.

*Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969) (citations omitted) (reh'g denied) 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123 (1969).

The first count of the complaint alleges that the Banks violated the automatic stay provision of 11 U.S.C. § 362 to the extent that post-petition advances on the letters of credit were made. The thrust of the trustee's allegations is apparently two-pronged. First, he argues that the credit agreement terminated upon the filing of bankruptcy and therefore any subsequent advances by the Banks were illegal. Secondly, he contends that the funds in ICX's bank account were property of the estate and the Banks knowingly withdrew said money without first filing a motion for relief from stay.

The Banks responded by filing a 12(b)(6) motion for failure to state a claim upon which relief can be granted. The Banks assert that they paid their own funds to Liberty Mutual, consequently they did not proceed against property of the estate. In addition, those funds removed from the ICX bank account were taken pursuant to a court-approved stipulation.

In determining whether to grant a 12(b)(6) motion, the Court primarily considers the allegations in the complaint although items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. C. Wright, G.A. Miller, Federal Practice and Procedure §§ 1355, 1357 (1969). This Court has referred to two exhibits, the Stipulation for Sale of Collateral and for Use of Cash Collateral and the Court Order approving the Stipulation, in order to aid its determination of this issue.

First, the trustee's argument that the Banks violated the stay by adding to ICX's debt, is legally unsupportable. By the trustee's own admission, the over-

whelming authority of the law after *Matter of Twist Cap, Inc.*, 1 B.R. 284 (Bankr.D. Fla.1979), indicates that a letter of credit and its proceeds are not property of the estate within the meaning of 11 U.S.C. § 541, and therefore the payment of a letter of credit is not a transfer of assets in violation of the automatic stay provisions of 11 U.S.C. § 362. *In re Elegant Merchandising, Inc.*, 41 B.R. 398, 399 (Bankr. S.D.N.Y.1984). "The stay provisions of Section 362 are inapplicable as far as it concerns property which is not part of the estate and which does not belong to the debtor." *In re North Shore & Central Illinois Freight Co.*, 30 B.R. 377 (Bankr.N. D.Ill.1983). *See also In re Page*, 18 B.R. 713 (D.D.C.1982); *In re M.J. Sales & Distributing Co., Inc.*, 25 B.R. 608 (Bankr.S.D. N.Y.1982); *In the Matter of Planes, Inc.*, 29 B.R. 370 (Bankr.N.D.Ga.1983); *In re Clothes, Inc.*, 35 B.R. 487 (Bankr.D.N.D. 1983). Therefore, the Banks' advancement of monies, whether pre-petition or post-petition does not violate Section 362 because it does not involve property of the estate. The trustee's contention that such payment was in contravention of the terms of the contract between the Banks and ICX is inappropriate in the context of Section 362 and will be considered in the breach of contract discussion.

The trustee's second argument is that the Banks violated the stay by taking monies from the debtor contrary to the court-approved Stipulation for the Sale of Collateral and for Use of Cash Collateral. This stipulation, entered into by the trustee and the Banks, expressly provides that:

> (2A) All funds on hand from time to time derived from the sale of collateral in excess of the aggregate amount of $200,-000 will be paid over to the Banks to be applied by the Banks toward the payment of the indebtedness claimed to be due them from the debtors in such priority as to principal, interest, fees, and expenses *as the Banks determine.*

(emphasis added).

The Banks claim that their obligation under the letters of credit is part of the indebtedness due them. The trustee claims that the stipulation did not contemplate letter of credit advances made after the filing of the petition or after the date of the stipulation. The plain meaning of the language in the stipulation indicates otherwise. Although the stipulation expressly provided that the agreement shall not "prejudice any rights the Trustee may have or claim to challenge or otherwise set aside the Bank's claims as creditors herein," again such a challenge is not appropriate within the context of a complaint alleging violations of the automatic stay.

Although the party defending the motion to dismiss bears only a light burden, the trustee has been unable to carry even this burden. There is no legal basis for the trustee's allegation that the Banks violated the stay by making advances on the letters of credit since such advances do not consist of property of the estate. Accordingly, even accepting the trustee's allegations in their entirety, there is no claim upon which relief can be granted for violation of the automatic stay where the Banks acted within the letter of a court order approving the use of cash collateral.

■ Count II, alleging breach of contract caused by the Banks' payment to Liberty Mutual on the letters of credit after bankruptcy, and Count III, seeking a declaratory judgment that the letters of credit expired by their terms upon the date of bankruptcy, were opposed by the Banks with a motion to dismiss. Liberty Mutual also moved to dismiss Count III. The defendants' motions are based upon their contention that the Bankruptcy Court lacks subject matter jurisdiction to hear this matter. Resolution of this issue requires a review of the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353 (hereinafter called amendments), *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (hereinafter called *Marathon*), and those cases construing both of the above. A few courts have had occasion to address issues similar to those presented here, however, an analysis of

these cases reflects the current uncertainty surrounding the parameters of the Bankruptcy Court's jurisdiction.

The amendments require the bankruptcy judge to determine whether a proceeding is a core proceeding or a related proceeding. 28 U.S.C. § 157(b)(3). If a matter is determined to be a core proceeding, the Bankruptcy Court may hear it and render a final determination, subject to appeal. 28 U.S.C. § 157(b)(1). Otherwise, the Bankruptcy Court may hear a related proceeding and submit proposed findings of fact and conclusions of law to the District Court. 28 U.S.C. § 157(c)(1).

The amendments provide a list of those matters which can be characterized as core proceedings. This list, which is not meant to be exclusive, includes:

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annual or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

28 U.S.C. § 157(b)(2).

The term "core proceeding" is not explicitly defined anywhere in the amendments. Apparently Congress sought to formulate it by setting forth 15 types of matters which come under the penumbra of "core proceedings," yet it did not circumscribe its meaning. Consequently, the outer limits of what constitutes a core proceeding is left to be defined by the courts. *In re Lion Capital Group*, 46 B.R. 850 (Bankr.S.D.N.Y.1985). Yet, any exercise in interpreting the amendments must be done within the guidelines set forth by the Supreme Court, since the purpose of the amendments was to rectify the unconstitutional jurisdiction found in *Marathon*.

On their face, the trustee's breach of contract action and request for declaratory judgment would appear to be core proceedings under either Section 157(b)(2)(C) or (O). Subsection (C) includes as core proceedings "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2)(C). Here, the defendants have filed proof of claims against the estate, thus the trustee's complaint may be construed as a counterclaim. According to some courts, this would constitute a core proceeding. In *Macon Prestressed Concrete Co. v. Duke*, 46 B.R. 727 (Bankr.M.D.Ga.1985), a proceeding was determined to be core in which the debtor sought to avoid two creditors' claims on a promissory note by attacking the enforceability of the note. In *In re Marketing Resources International Corp.*, 43 B.R. 71

(Bankr.E.D.Pa.1984) a core proceeding was found where the debtor brought a complaint for tortious interference with contractual relationships against an individual who had filed a proof of claim against the estate. Finally, the District Court, in *In re Lombard-Wall Incorporated,* 48 B.R. 986 (S.D.N.Y.1985), held that the debtor's eight claims for relief concerning a creditor's draws on letters of credit constituted a core proceeding as a counterclaim by the estate against a creditor who had filed a claim. The court found that the claims of the creditor and debtor arose out of the same transaction and that the bankruptcy court had correctly concluded that judicial economy dictated they be heard in the same forum.

Additionally, Subsection (O) provides that core proceedings include "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship...." 28 U.S.C. § 157(b)(2)(O). The present matter also arguably appears to come within a literal interpretation of Subsection (O). Certainly a breach of contract claim can be thought of as a proceeding "affecting the liquidation of assets of the estate" because if the debtor prevails, the estate will have more assets to distribute to its creditors. It is also true that, because the defendants in this claim have filed proofs of claim, this proceeding can be thought of as involving the "adjustment of the debtor-creditor ... relationship." The court in *In re Lion Capital Group,* 46 B.R. 850, (Bankr.S.D.N.Y.1985) utilized a literal construction of Subsection (O) and concluded that an adversary proceeding initiated by the trustee and arising out of certain contractual matters was a core proceeding.

As stated earlier, 28 U.S.C. § 157 cannot be construed absent consideration of the constitutional constraints which the Supreme Court, in its *Marathon* holding, noted were indigenous to Article I courts. At issue in *Marathon* were the classic state causes of action, breach of contract and warranty, misrepresentation, coercion and duress. The defendant, Marathon Pipe Line Co., did not file a proof of claim in the

case. A plurality of the Supreme Court held that Congress' broad grant of jurisdiction to the bankruptcy courts was unconstitutional because it allowed Article I courts to hear controversies required by the constitution to be heard by Article III courts.

Indeed, the case before us, which centers upon appellant Northern's claim for damages for breach of contract and misrepresentation, involves a right created by state law, a right independent of and antecedent to the reorganization petition that conferred jurisdiction upon the bankruptcy court. Accordingly, Congress' authority to control the manner in which that right is adjudicated, through assignment of historically judicial functions to a non-Art. III 'adjunct' plainly must be deemed at a *minimum.*

*Marathon,* 458 U.S. at 84, 102 S.Ct. at 2878 (emphasis added) (footnote deleted).

Justices Rehnquist and O'Connor concurred with the result to form a majority of six who held that the bankruptcy courts have no jurisdiction over state law contract disputes. They noted separately,

From the record before us, the lawsuit in which Marathon was named defendant seeks damages for breach of contract, misrepresentation, and other counts which are the stuff of the traditional actions at common law tried by the courts at Westminister in 1789. There is apparently no federal rule of decision provided for any of the issues in the lawsuit; the claims of Northern arise entirely under state law. No method of adjudication is hinted, other than the traditional common law mode of judge and jury. The lawsuit is before the Bankruptcy Court only because the plaintiff has previously filed a petition for reorganization in that Court.

*Marathon,* 458 U.S. at 90, 102 S.Ct. at 2881.

Thus, *Marathon* provided a clear mandate that the jurisdiction of the bankruptcy courts to determine state law causes of action should be regarded with much cir-

cumspection lest constitutional principles be offended.

*Marathon's* progeny also include several decisions construing Section 157 in a much narrower manner than those cases previously discussed. The United States District Court for the District of Colorado determined that a complaint, filed by the debtor-in-possession against a defendant/creditor seeking injunctive relief for an alleged breach of a leasing contract, was a non-core proceeding. *In re Pierce,* 44 B.R. 601 (Bankr.D.Colo.1984) (hereinafter called *Pierce*). In *Pierce,* the debtor filed a Chapter 11 proceeding and listed the defendant, Airport Development Corporation, as a creditor on their statements and schedules. The debtor then filed a complaint against Airport Development Corporation seeking an injunction allowing the debtor to collect and retain rents pursuant to their leasing agreement.

The bankruptcy court, based upon the premise that it was ruling on a core proceeding, enjoined the defendant from collecting the rents or interfering with the debtor. On appeal, the district court dissolved the bankruptcy court's order and dismissed all claims of the debtor against Airport Development Corporation because, "no relevant difference exists between the state contract claim seeking damages in *Marathon* and the state contract claim seeking an injunction here." *Pierce,* 44 B.R. at 602. The district court went on to note that core proceedings do not encompass separate state law actions and any different construction of Section 157 would require explicit rejection of the *Marathon* mandate.[1]

The term related proceeding, like core proceeding, is not defined in the amendments despite its vital nature. The Tenth Circuit Court of Appeals defined related proceedings as "those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court." *Matter of*

*Colorado Energy Supply, Inc.,* 728 F.2d 1283, 1286 (10th Cir.1984). Accordingly, the district court in *Mohawk Industries, Inc. v. Robinson Industries, Inc.,* 46 B.R. 464 (D.Mass.1985) determined that the debtor's complaint for breach of warranty against a creditor was a related proceeding. The debtor tried to argue that its breach of warranty claim fell within the letter of a core proceeding as described in 28 U.S.C. § 157(b)(2)(O) since, if the debtor prevailed, the estate would have more assets to distribute to its creditors. The court noted that a close reading of *Marathon* reveals that such an interpretation would be unconstitutional because it would result in an Article I court finally adjudicating rights that are traditionally cognizable in Article III courts. Finally, the district court noted that because this was a non-core proceeding, it could refer the matter to the bankruptcy court for proposed findings of fact and conclusions of law.

The court in *In re Atlas Automation, Inc.,* 42 B.R. 246 (Bankr.E.D.Mich.1984) narrowly construed the term "core proceedings" and concluded that the debtor's complaint, based on a contract action, was not a core proceeding. The court stated,

> Although money due to a Chapter 11 debtor can certainly be described as property of the estate for which the plaintiff is requesting a 'turn over' order [ [(157 § (b)(2)(E))] and although this is a 'proceeding affecting the liquidation of the assets of the estate' [ (§ 157(b)(2)(O) ] ... the court cannot ignore the legislative intent behind the recent enaction of the Bankruptcy Amendments.... Therefore, the Court, on its own motion, pursuant to 28 U.S.C. § 157(b)(3), determines that this case is a proceeding that is otherwise related to a case under title 11.

*Atlas,* 42 B.R. at 247.

It should be noted that although the defendant in *Atlas* did not file a proof of claim against the estate, it did file a counterclaim to the debtor's complaint.

---

1. Nowhere in *Pierce* did the district court address whether the bankruptcy court could have administered the complaint as a related proceeding by submitting proposed findings of fact and conclusions of law to the district judge for *de novo* review.

Similarly, in *In re Morse Elec. Co., Inc.,* 47 B.R. 234 (Bankr.N.D.Ind.1985) the debtor commenced an adversary proceeding involving allegations of breach of contract, bad faith injury to its business, and negligence. The debtor contended that its attempt to obtain a judgment on these matters was a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O) since a judgment would affect the liquidation of assets of the estate. The court noted the similarity between the matter before it and *Marathon* and concluded that "the proceeding fell squarely into the non-core category as a pre-bankruptcy state common-law action related peripherally to the bankruptcy itself." *Morse,* 47 B.R. at 237. It should be noted that the defendant in *Morse,* unlike the defendants in *Pierce, Mohawk* or *Atlas* who were either creditors or had filed counterclaims, was otherwise a stranger to the bankruptcy case.

The defendants in the present case have filed proofs of claim and Counts II and III arguably fall within a literal interpretation of core proceedings pursuant to either Section 157(b)(2)(C), Section 157(b)(2)(O), or both. However, in light of the mandate set forth in *Marathon,* such an interpretation would not pass constitutional muster. The Supreme Court stated that Congress' authority to control the manner in which state-created rights are adjudicated through adjunct courts must be deemed at a minimum. The controversies in Counts II and III certainly depend upon state law for their resolution. In fact they arise entirely under state law since there is apparently no federal rule of decision provided for these issues. Thus, Counts II and III are before the Court only because the plaintiff has previously filed a petition for reorganization in this Court.

The facts in this proceeding are similar to those in *Pierce.* Here, as in *Pierce,* the defendant in the state law contract action is a creditor of the debtor. Although the court in *Pierce* confined itself to discussing construction of 28 U.S.C. § 157(b)(2)(E), the proceedings in *Pierce* would arguably fall within the literal definition of 28 U.S.C. § 157(b)(2)(C) and (O) core proceedings for

the same reasons the proceedings in the present case do. Finally, both proceedings involve alleged post-petition breaches of contract. Consequently, this court adopts the holding in *Pierce,* to wit, core proceedings do not encompass separate state law actions. Further, the presence of a non-bankrupt party as a claimant, or whether resolution of the dispute would augment the debtor's estate or affect liquidation of assets of the estate, are factors that are not determinative of either the core or non-core distinction when tested against the criteria set forth in *Marathon.* For the foregoing reasons the Court finds that Counts II and III are related proceedings and this Court is without jurisdiction to finally determine them. The question of whether this Court should hear these matters as related proceedings pursuant to Section 157(c)(1) is discussed below.

■ The final three counts in the trustee's complaint are directed against Liberty Mutual singularly and include allegations of voidable preferences (11 U.S.C. § 547), post-petition transfers (11 U.S.C. § 549), and turnover of property (11 U.S.C. § 542). All three of these actions arise out of funds advanced by the Banks to Liberty Mutual in the form of payments on the letters of credit. Liberty Mutual, in its motion to dismiss, asserted that the transfers in controversy do not involve property of the estate and therefore are beyond the jurisdiction of this Court.

As indicated earlier, the overwhelming authority of the law after *Matter of Twist Cap, Inc.,* 1 B.R. 284 (Bankr.D.Fla.1979) indicates that those monies advanced by the Banks to Liberty Mutual were not property of the debtor's estate. *See In re Page,* 18 B.R. 713 (D.D.C.1982); *In re Elegant Merchandising, Inc.,* 41 B.R. 398 (Bankr.S.D.N.Y.1984); *In re M.J. Sales & Distributing Co., Inc.,* 25 B.R. 608 (Bankr. S.D.N.Y.1982); *In re Clothes, Inc.,* 35 B.R. 487 (Bankr.D.N.D.1983); *In re Leisure Dynamics, Inc.,* 33 B.R. 171 (Bankr.D.Minn. 1983); *In re North Shore Central Illinois Freight Co.,* 30 B.R. 377 (Bankr.N.D.Ill.).

Perhaps the best explanation for this result may be found in *In re W.L. Mead,* 42 B.R. 57 (Bankr.N.D.Ohio 1984) where the court made the following remarks:

> A letter of credit is a document which signifies a three party transaction, whereby a customer engages an issuer to honor the drafts of a beneficiary. It is well settled that a letter of credit and the proceeds therefrom are not property of the debtor's estate. *North Shore & Central Illinois Freight Co. v. American National Bank & Trust Co. of Chicago (In re North Shore & Central Illinois Freight Co.),* 30 B.R. 377 (Bkcy.N.D.Ill.1983). When the issuer of a letter of credit issues such a document, it creates, as the result of an agreement between the customer and the issuer, a separate and distinct obligation between the issuer and the beneficiary. The issuer obligates itself to honor all drafts of the beneficiary which are presented in compliance with the letter 28 Ohio Jr.3d *Credit Cards and Letters of Credit* § 31. When the issuer honors a proper draft, it does so from its own assets and not from the assets of the customer. *In re M.J. Sales & Distributing Co., Inc.,* supra.

*Mead,* 42 B.R. at 60.

■ The Bankruptcy Court's jurisdiction does not extend to control property in which the debtor has no property interest. *Jordan v. Randolph Mills, Inc.,* 29 B.R. 398 (Bankr.M.D.N.C.1983) (contempt citation later vacated) 716 F.2d 1053 (4th Cir. 1983). *See also In re Dr. C. Huff Co., Inc.,* 44 B.R. 129 (Bankr.W.D.Ky.1984). Since the property which is the subject of counts IV through VI is neither property of the estate nor property of the debtor, this Court has no jurisdiction to grant the trustee any judgment on these claims. Therefore, the trustee has no legal basis to proceed on these matters in this forum consequently these counts are dismissed.

The final issue that this Court will address is whether abstention is appropriate for Counts II and III for breach of contract and declaratory relief. The trustee opposes abstention on two grounds. First, mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2) is inapplicable because its effective date is subsequent to the petition date. Second, the trustee contends that discretionary abstention under 28 U.S.C. § 1334(c)(1) should not apply because the interests of justice, comity with state courts, and respect for state law can be adequately served in the bankruptcy forum. On the other hand, the defendants urge this Court to exercise its discretionary power to abstain because they maintain that *de novo* review is neither adequate nor appropriate for state law based claims.

■ Mandatory abstention, as defined in 28 U.S.C. § 1334(c)(2), is not applicable to the present causes of action because the bankruptcy petition was filed before the provision's effective date, July 10, 1984. Bankruptcy Amendments and Federal Judgeship Act of 1984, § 122(b) (28 U.S. C.A. § 151 [effective date and application of amendments]). Otherwise, abstention is mandatory for related matters where there is a timely motion of a party and a state court action has commenced. 28 U.S.C. § 1334(c)(2). "By requiring mandatory abstention, Congress has adopted a policy which clearly favors resolution of related state law causes of action in state courts." *In re Smith-Douglass, Inc.,* 43 B.R. 616 (Bankr.E.D.N.C.1984). Therefore, it is appropriate to examine the elements of the mandatory abstention provision for guidance in exercising discretionary abstention under 28 U.S.C. § 1334(c)(1). Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under Title 11 but not arising under Title 11 or arising in a case under Title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.

It is apparent that the breach of contract and declaratory judgment counts are state law causes of action which could not be commenced in a federal court absent Section 1334(b). There is also no reason to believe that these proceedings could not be timely adjudicated in a state forum. Hence, the elements for mandatory abstention under Section 1334(c)(2) are present here except for the single criterion that a proceeding in the state forum has been commenced. Yet there need not be a case pending for discretionary abstention to apply. *In re Smith-Douglass, Inc.*, 43 B.R. at 618 n. 5. Therefore, although mandatory abstention is not applicable to the present proceedings, most of the criteria that Congress set forth for making the abstention decision are met. It would thus be keeping with the policy Congress contemplated for this Court to abstain here.

The decision to abstain is reinforced by the interest promoted by exercising respect for state law. It is apparent that this proceeding is based on state law causes of actions which are related to, but do not arise under Chapter 11. But for the debtor's filing a bankruptcy petition, the matter would not be in the bankruptcy forum now. Since respect for state law favors state courts interpreting the laws of the state forum, this Court exercises its discretionary abstention power for Counts II and III.

ORDERED that Count I, for violation of the automatic stay is dismissed for failure to state a claim upon which relief can be granted. Counts II and III for breach of contract and declaratory relief are determined to be related proceedings and the Court chooses to exercise its discretionary abstention powers. Counts IV through VI for voidable preference, post-petition transfers, and turnover are dismissed for lack of jurisdiction over the property.