**In re GENERAL DEVELOPMENT CORPORATION, Debtor.**

**Bankruptcy No. 90–12231–BKC–AJC.**

United States Bankruptcy Court, S.D. Florida.

Jan. 30, 1991.

Scott L. Baena, Stroock & Stroock & Lavan, Miami, Fla., for Southeast Bank, N.A.

Mark Bloom, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, Miami, Fla., for General Development Corp.

Bondholders Committee, Richard Tilton, Whitman & Ransom, New York City.

ORDER GRANTING JOINT MOTION OF GENERAL DEVELOPMENT CORPORATION, SOUTHEAST BANK, N.A. AND THE FIRST NATIONAL BANK OF BOSTON FOR ORDER PURSUANT TO BANKRUPTCY RULE 9019(A) AUTHORIZING COMPROMISE AND SETTLEMENT OF CERTAIN CLAIMS BETWEEN GENERAL DEVELOPMENT CORPORATION, THE FIRST NATIONAL BANK OF BOSTON AND SOUTHEAST BANK; N.A.

A. JAY CRISTOL, Bankruptcy Judge.

THIS CAUSE came on to be heard on August 30, 1990, upon the Joint Motion of General Development Corporation ["GDC"], Southeast Bank, N.A. ["Southeast"] and The First National Bank of Boston ["FNBB"] for Order Pursuant to Bankruptcy Rule 9019(a) Authorizing Compromise and Settlement of Certain Claims Between General Development Corporation, The First National Bank of Boston and Southeast Bank, N.A. (the "Motion"). The only objection to the Motion was filed by the Bondholders' Committee.

The relevant facts surrounding the Motion do not appear to be in dispute. On or about December 27, 1988, GDC and FNBB entered into that certain Receivables Purchase Agreement (as from time to time amended, the "Agreement"), whereunder FNBB agreed, *inter alia*, to purchase payments of principal and interest becoming due under certain written contracts be-

tween GDC and others for the purchase of lots owed by GDC on an installment basis (the "Receivables").

The Agreement required, *inter alia,* that GDC's obligations thereunder (the "Obligations") be secured by collateral specified therein, as well as a letter of credit in favor of FNBB. Such letter of credit (as from time to time extended or renewed, the "Letter of Credit") was issued by Southeast.

The parties now seek the Court's approval of a settlement and compromise whereby the Letter of Credit would be terminated and accordingly, GDC would not have any reimbursement obligation in respect thereof to Southeast (the "Reimbursement Obligation"), and; FNBB shall sell to Southeast, *inter alia,* an undivided subordinated participation in FNBB's rights under the Agreement in consideration for the Payment Amount. The terms of such settlement and compromise are more particularly set forth in the Stipulation annexed to the Motion as Exhibit 1 (the "Stipulation").

■ The objection of the Bondholders' Committee is to the effect that the proposed settlement engenders notions of equitable subrogation, to which it is argued that Southeast is not entitled, and unjust enrichment. Simply stated, the Bondholders' Committee complains that the proposed settlement would permit Southeast to convert its claim against GDC comprised of the Reimbursement Obligation, which the Committee argues is unsecured, to a claim arising under the Agreement which would be a secured claim. The objection fails for several reasons.

Firstly, the objection assumes that this Court can compel payment by Southeast under the Letter of Credit. More specifically, the Bondholders' Committee argues that the effect of the settlement is to "increase secured claims from $14,468,305 to $19,418,635 [i.e., the face value of Receivables], reduce unsecured claims by $4,950,330 [i.e., the Payment Amount], and result in the reduction of the debtor's equity by $4,950,330." The reduction complained of, however, assumes that the Letter of Credit must necessarily be paid. Whether or not Southeast is obligated to pay under the Letter of Credit is a matter between Southeast and FNBB. This Court cannot make that determination. *In re Guy C. Long,* 74 B.R. 939 (Bankr.E.D.Pa.1987); *In re Wisconsin Barge Line, Inc.,* 63 B.R. 40 (Bankr.E.D.Mo.1986); *In re Illinois–California Express, Inc.,* 50 B.R. 232 (Bankr.D. Colo.1985); *In re Clothes, Inc.,* 35 B.R. 487 (Bankr.D.N.D.1983); *In re North Shore & Cent. Ill. Freight Co.,* 30 B.R. 377 (Bankr. N.D.Ill.1983); *In re M.J. Sales & Distrib. Co.,* 25 B.R. 608 (Bankr.S.D.N.Y.1982); *In re Page,* 18 B.R. 713 (D.D.C.1982). The Court, therefore, may assume for these purposes that the Letter of Credit has not and may never be paid and thus, the proposed settlement does not engender any adverse effect whatsoever on the estate of GDC cognizable by the Court.

■ Secondly, it is axiomatic that the parties to a letter of credit transaction (i.e., the issuer, the beneficiary and the account party) are free to mutually agree upon the revocation of the letter of credit. B. Wunniche, *Standby Letters of Credit,* 135–6 (1989). The objection raised by the Bondholders' Committee implicitly entails a determination by the Court to the contrary. Indeed, the objection engenders notions vaguely resembling marshalling to the extent it would require that FNBB must draw upon and apply the proceeds of the Letter of Credit in reduction of the Obligations. Inasmuch as members of the Bondholders' Committee are unsecured claimants in this case, this implicit assertion of principles of marshalling is inappropriate.

■ Thirdly, it is likewise axiomatic that unless a lender and a borrower have agreed to the contrary (which is not the case here), the lender is free to sell to another a participation interest in its loan to the borrower.

Finally, the objection of the Bondholders' Committee assumes that the Receivables are fully performing. That is hardly the case. The Third Report of the Examiner appointed herein indicates that the Receivables suffer from a significant delinquency rate. It is not at all clear that at the

present rate of delinquency the Receivables will be sufficient to repay even the portion of FNBB's loan which will not be participated to Southeast. In fact, in the initial presentation of the "lot exchange" program GDC is endeavoring to formulate, the debtor projected that its assigned contracts receivable (which include the Receivables) will never recover from a delinquency rate of approximately 30%. Thus, the objection may entail no more than an academic exercise since the alleged unjust enrichment of Southeast shall not occur unless and until there is substantial improvement in the performance of the Receivables. This practical limitation on the improvement of Southeast's position is further exacerbated by the fact that the participation it is purchasing is fully subordinated to the repayment of FNBB's costs and expenses, in addition to the principal and interest on the Obligations which are not participated, and by FNBB's voluntary setting aside of collections of a portion of the Receivables for the completion of improvements.

For all of the foregoing reasons, the Court finds that the objection of the Bondholders' Committee is not supported by either applicable law or facts, and accordingly it is

ORDERED AND ADJUDGED as follows:

1. The objection of the Bondholders' Committee to the Motion be and hereby is overruled;

2. The Motion be and hereby is granted and the parties to the Stipulation are hereby authorized and directed to comply with the terms thereof.

DONE AND ORDERED.