### In re CLOTHES, INC., d/b/a Jays Mens Shop and Mr. D's, Debtor.

### Phillip D. ARMSTRONG, Trustee for Estate of Clothes, Inc., d/b/a Jays Mens Shop and Mr. D's, Plaintiff,

v.

### FNB FINANCIAL COMPANY, Defendant.

Bankruptcy No. 81-05004.
Adv. No. 82-7312.

United States Bankruptcy Court,
D. North Dakota.

Nov. 2, 1983.

Phillip D. Armstrong, Minot, N.D., trustee.

Steven C. Lian, Minot, N.D., for defendant.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This action arises out of the circumstances surrounding a letter of credit issued by the First National Bank of Minot (BANK) to FNB Financial Company (FNB), the Defendant herein. On May 20, 1980, the Bank, through its vice-president, issued an irrevocable letter of credit to FNB for any sum not exceeding $8,000.00 on account of the Debtor, Clothes, Inc. On December 16, 1980, FNB exercised its rights under the letter of credit and by letter to the Bank demanded payment in the amount of $8,090.62 by reason of the Debtor's failure to pay various invoices according to terms. Accompanying this letter was a sight draft payable to FNB in the sum of $8,000.00 and drawn under the May 20, 1980, letter of credit. The Bank, in reply to the Defendant's demand, paid to it the sum of $7,990.00 on January 15, 1981.

On January 6, 1981, an involuntary petition was filed against the Debtor, Clothes, Inc., by various creditors of it, and an Order for Relief under Chapter 7 was entered by the Court on January 28, 1981. On September 16, 1982, the Trustee brought an adversary proceeding seeking to avoid the payment made to FNB pursuant to the letter of credit.

The Defendant, FNB, on February 1, 1983, moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, asserting that the independent nature of letters of credit takes the transaction between the Bank and FNB outside the perview of § 547(b) of the Bankruptcy Code pertaining to preferences.

The movant's position is that the payment made to FNB by virtue of the pre-filing letter of credit was not an asset of the Debtor but rather was a payment made from the Bank's own funds based on its independent relationship with FNB, hence there was no preference to FNB. The Plaintiff-Trustee, however, argues that the payment was a transfer, however indirect, of the Debtor's property and said payment diminishes the assets of the estate.

Rule 56 of the F.R.C.P. provides for the granting of summary judgment where the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, all doubts as to the existence of factual issues must be resolved in favor of the party opposing the motion. *S.E.C. v. Research Automation Corp.*, 585 F.2d 31 (2nd Cir.1978). The facts of this case are uncontroverted. There is no dispute that an irrevocable letter of credit was issued by the Bank to FNB and that some 9 days after the Chapter 7 petition was filed, the Bank honored the letter of credit. Although the Plaintiff in its Brief raises the question of fraud, fraud has not been alleged in his Complaint nor have any facts in this regard been stated. The essential issue is whether the payment was a transfer of property belonging to the estate.

The letter of credit, by its terms, provided:

"We hereby open our irrevocable letter of credit in your favor available by your drafts drawn on the First National Bank of Boston, Boston, Massachusetts, at sight for any sum or sums not exceeding in total $8,000.00 U.S. Dollars for account of Clothes, Inc., Minot, North Dakota."

The law has long regarded letters of credit to be irrevocable obligations of the issuer which exist independent of any relationship the issuer might otherwise have with the procurer. Letters of credit have been utilized in Commerce at least from the 7th Century and their use is codified by the Uniform Commercial Code. U.C.C. Part 5. § 41–05–14 of the North Dakota Century Code provides that letters of credit must be honored immediately by the issuer despite whatever claims or defenses the procurer might raise. This is a nearly absolute obligation save for a defense of fraud. The conflict arises in reading § 362(a)(3) of the Bankruptcy Code which defines property of

the estate as being "all legal or equitable interests of the debtor". Apparently the 1979 case of *In re Twist Cap, Inc.*, 1 B.R. 284 (Bkrtcy.D.Fla.1979) was the bankruptcy decision that first challenged the continued vitality of letters of credit once a petition had been filed. The Trustee places strong reliance on this case in opposing the instant motion. However, a reading of *Twist Cap* reveals that the court in that case did not address the issue of preference but merely issued a restraining order pending final determination. Cases decided since 1979 have been unanimous in the position that letters of credit represent an irrevocable obligation by the issuing bank to the beneficiary and that this obligation is an independent contractual obligation to pay the beneficiary from the bank's own assets. *In re Page,* 18 B.R. 713 (D.C.D.C.1982); *In re M.J. Sales & Distributing Co., Inc.,* 25 B.R. 608 (Bkrtcy. N.Y.1982).

The facts existent in *In re Page* are nearly identical with those in the case now at bar. There the beneficiary presented the letter of credit to the bank four days following the filing of a Chapter 11 petition. The bankruptcy court enjoined payment of the letter of credit but upon appeal the district court held that the cashing of a letter of credit will not diminish the debtor's estate because *neither the letter of credit nor its proceeds are property of the estate under the code.* 18 B.R. 713 at 715. The Plaintiff-Trustee believes this decision to be deficient in that it failed to consider the situation where, as here, the final step of perfection did not occur until after the bankruptcy filing. The final step necessary for perfection, according to the Trustee, is that of a value exchange by the Bank. This position assumes that the Bank is a secured creditor of the Debtor, and the letter of credit became perfected only at the instant of payment. Whether the Bank is or is not a secured creditor of the Debtor has absolutely no bearing on the relationship between the Bank and FNB, and that relationship is complete in and of itself. The Bank irrevocably promised to pay FNB when FNB presented a request and draft. The Debtor was not even a party to this contract. The contract between FNB and the Bank was complete when on May 20, 1980, the Bank issued the letter of credit. At that point, it became a fixed obligation requiring no further performance.

This Court rejects whatever rationale has evolved from the *Twist Cap* case, feeling that to follow that case would be wholly contrary to long established commercial law principles. The beneficiary of a letter of credit does not, in this Court's opinion, receive a preference.

It is the opinion of this Court that by cashing the letter of credit, the Bank expended its own funds and not those of the Debtor's estate. Accordingly, the transfer is not subject to either § 362 or § 547 of the Bankruptcy Code.

Accordingly,

IT IS ORDERED that the Defendant's Motion for Summary Judgment is granted and this case is hereby dismissed with prejudice, each party to bear its own costs.