In re AOV INDUSTRIES, INC. Alla-Ohio Valley Coals, Inc. Morehead City Coal Terminals, Inc. Camden Coal Terminal, Inc. A & T Associates, Inc. Fairmont Energy, Inc. Noralla Corporation Birnen Coal Co., Inc. Diggem Coal Co., Inc., Debtors.

William J. PERLSTEIN, as Disbursing Agent for the AOV Industries Fund, Plaintiff,

v.

LAMBERT COAL CO., INC., Defendant.

William J. PERLSTEIN, as Disbursing Agent for the AOV Industries Fund, Plaintiff,

v.

LOGAN & KANAWHA COAL CO., INC., Defendant.

William J. PERLSTEIN, as Disbursing Agent for the AOV Industries Fund, Plaintiff,

v.

PILGRIM COAL SALES CORP. and Pilgrim Coal Corp., Defendants.

William J. PERLSTEIN, as Disbursing Agent for the AOV Industries Fund, Plaintiff,

v.

RAINTREE COAL CO., Defendant.

William J. PERLSTEIN, as Disbursing Agent for the AOV Industries Fund, Plaintiff,

v.

SUMMERS FUEL, INC., Defendant.

William J. PERLSTEIN, as Disbursing Agent for the AOV Industries Fund, Plaintiff,

v.

TYCOAL, INC., Defendant.

William J. PERLSTEIN, as Disbursing Agent for the AOV Industries Fund, Plaintiff,

v.

ZAPATA COAL SALES, INC., Defendant.

William J. PERLSTEIN, as Disbursing Agent for the AOV Industries Fund, Plaintiff,

v.

CAMELOT COAL CO., Defendant.

Bankruptcy No. 81-00617.
Adv. Nos. 84-0090, 84-0092, 84-0097, 84-0100, 84-0101, 84-0104, 84-0105 and 84-0194.

United States Bankruptcy Court, District of Columbia.

Sept. 10, 1986.

See also 798 F.2d 491.

Frank M. Northam, Washington, D.C., for Pilgrim Coal Sales Corp. and Pilgrim Coal Corp.

J. Peter Byrne, Michael Coursey, Covington & Burling, Washington, D.C., for Raintree Coal Co.

Thomas L. Hudson, H. Barritt Peterson, Jr., Cook, Howard, Downes & Tracy, Towson, Md., for Summers Fuel, Inc.

Peter N. Georgiades, Washington, D.C., for Tycoal, Inc.

David T. Ralston, Jr., Crowell & Moring, Washington, D.C., for Zapata Coal Sales, Inc.

Larry E. Christensen, Buchanan Ingersoll, P.C., Washington, D.C., for Camelot Coal Co.

Max O. Truitt, Jr., Duane D. Morse, Wilmer, Cutler & Pickering, Washington, D.C., for Disbursing Agent.

John J. Sabourin, Jr., Hazel, Beckhorn & Hanes, Fairfax, Va., for Lambert Coal Co., Inc.

Phillip H. Barrett, Joanne M. Schreiner, Porter, Wright, Morris & Arthur, Washington, D.C., for Logan & Kanawha Coal Co., Inc.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge, sitting by designation.

In this case we are confronted with cross-motions for summary judgment.[1] For the reasons set forth below we find that the Disbursing Agent is not entitled to summary judgment because the defendants have raised a material issue of fact concerning Alla-Ohio's possible lack of an "interest" in the letters of credit that Alla-Ohio transferred to the defendants. We find further that the defendants are entitled to summary judgment as a matter of law because the various transfers sought to be avoided were either made before the preference period or were made in the ordinary course of business within 45 days of the dates the debts were incurred.

The underlying complaints in these cases, filed by the Disbursing Agent[2] for the AOV Industries Fund, William J. Perlstein, seek to avoid and recover certain transfers as preferences under section 547 of the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101–151326 ("the Code"). Named as defendants in these actions are coal suppliers from whom one of the debtors, Alla-Ohio Valley Coals, Inc. ("Alla"), purchased coal during the months preceding the filing of its bankruptcy petition.

The Court heard oral argument on the summary judgment motions in the Camelot Coal Co. and Logan and Kanawha Coal Co., Inc. proceedings on July 19, 1985. The remaining summary judgment motions under consideration were heard on September 18, 1985. Since the issues in all of the adversary proceedings are substantively identical, all the motions will be considered together in a single opinion. An appropriate order will issue in each case.

All the transfers alleged to be preferential follow substantially the same pattern. Pursuant to an on-going business relationship with Steag-Handel Gmbh of West Germany ("Steag"), Alla bought coal in America that Steag needed for delivery to its European customers. Steag would place an order with Alla and, after Alla cabled Steag that it had found an American supplier willing and able to provide coal meeting Steag's requirements, Steag would open a letter of credit in Alla's favor in an amount approximately equal to the supplier's price. Each letter was issued by Steag's German bank, Commerzbank, A.G. ("Commerzbank"). In order to draw on the letters of credit as the beneficiary, Alla was required to present documents to Commerzbank's American branch as evidence that coal meeting the required specifica-

1. Raintree Coal Co. opposed the Disbursing Agent's summary judgment motion but, unlike the other defendants, chose not to file one of its own.

2. The Plan of Reorganization, confirmed on June 30, 1983, established the position of Disbursing Agent and appointed William J. Perlstein to fill that position. After a hearing on the 23rd day of November, 1984, this Court by order dated April 3, 1985 sustained such appointment by denying Burnell-Butler Corporation's motion to vacate.

tions had been shipped on rail-cars and/or dumped on board a ship chartered by Steag. The necessary documents included a signed commercial invoice, railroad bills of lading, and a certificate of mine analysis.

In each of the transactions at issue, Alla transferred the letter of credit along with all rights and duties thereunder to the supplier on or shortly after the date on which the supplier shipped the coal by rail-car. The supplier itself then presented the required documents to Commerzbank and drew the proceeds provided for by the letter of credit. Thus, although Alla conceivably could have retained the letters of credit, obtained the requisite documents, and made drafts on the letters itself, in each case it used the letter as a means to finance its purchase of coal.

The preference actions of the Disbursing Agent focus on the funds drawn by the defendants under the transferred letters of credit. He argues that these proceeds represented cash belonging to Alla that Alla allowed Commerzbank to turn over directly to the defendants. The defendants do not dispute that the funds were paid by Commerzbank within ninety days of the filing of Alla's bankruptcy petition on November 6, 1981. However, the defendants deny that the bank funds constituted property of the debtor within the meaning of section 547(b) of the Code. The defendants argue *inter alia* that the relevant transfers for the purpose of preference analysis were the transfers of the letters of credit themselves, assuming that Alla had an interest in the letters. These transfers would be protected from the Disbursing Agent's avoiding powers either because they were made outside the ninety-day preference period or because they fall within one of the statutory exceptions to avoidance. *See* 11 U.S.C. § 547(c).

With the Disbursing Agent's consent, the Court has considered each of the defendants' arguments for the benefit of all defendants. The Court's ultimate conclusions of law will apply uniformly in all cases. Accordingly, if only one of the defendants

has identified a principle which benefits all the defendants, then all will benefit.

Under section 547(b) of the Code, a prepetition transfer by the debtor of an interest in property is an avoidable preference if that transfer is

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition ... [and]
...

(5) [one] that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The Code's preference and avoidance provisions "facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor." H.R.Rep. No. 595, 95th Cong., 1st Sess. 177–78 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6137–6139. To prevent or account for unequal treatment of creditors by a debtor pre-petition, preference law sets aside transfers made during defined periods prior to bankruptcy that have the result of "favoring the transferee over other similar creditors who may share in the distribution [of the bankruptcy estate]." 4 *Collier on Bankruptcy* ¶ 547.21, at 547–85 through 547–88 (15th ed. 1986).

I. The Disbursing Agent's Motions for Summary Judgment.

To prevail in his preference actions, the Disbursing Agent must establish each of six elements: he must show that the debtor transferred an "interest of the debtor in property" and that such transfer satisfies each of the five conditions enumerated in section 547(b). In addition, to prevail as a

matter of law on the instant summary judgment motions, the Disbursing Agent must demonstrate that no issue of material fact exists as to any of the above-mentioned six elements. *Bloomgarden v. Coyer*, 479 F.2d 201, 206–07 (D.C.Cir.1973).

Several of the defendants have argued vigorously that Alla did not have an "interest" in the letters of credit it transferred to them. Accordingly, if Alla had no interest in the letters themselves, then *a fortiori* the Disbursing Agent cannot claim through Alla an interest in their proceeds and the Disbursing Agent's position cannot be sustained.

■ The defendants offer several theories in support of their argument. According to one scenario, Alla was merely an agent or broker buying coal for Steag on the basis of Steag's credit and with Steag's funds. A transfer by an agent of property belonging to its principal cannot be avoided as a preference. *See In re Crouthamel Potato Chip Co., Inc.*, 6 B.R. 501, 507 (Bankr.E.D.Pa.1980).

■ The evidence reveals that Alla and Steag admittedly had an agent/principal relationship some time prior to the period in question here. *See* Deposition of Thomas Martin Rudolf Mulert, Managing Director of Steag (taken November 29, 1983) (offered as Exhibit 2 to "Plaintiff's Reply to [Summers Fuels'] Opposition Brief"). At least one defendant, Camelot Coal Co., insists that it believed Alla to be Steag's agent and dealt with Alla accordingly. The facts tend to show that Steag bought American coal exclusively through Alla and orchestrated the movement of the coal from the mines in America to Steag's customers in Europe.

The evidence to establish a true agency relationship between Steag and Alla during the relevant period is not entirely convincing. However, the written agreements between the said parties which describe a non-agency relationship [3] do not dispose of the issue. Furthermore, the Disbursing Agent failed to offer the requisite proof that the agreements were scrupulously honored. Without such proof, the assertions of Camelot Coal Co. that an agency relationship existed are not adequately refuted. Consequently, a genuine issue of material fact remains making summary judgment in favor of the Disbursing Agent inappropriate.

■ Other defendants allege that Alla was a joint venturer with Steag. The letters of credit thus would have been property belonging to Steag or the venture, not Alla. The Disbursing Agent concedes that Alla and Steag were planning to engage in a joint venture to sell coal overseas but claims that Alla's bankruptcy occurred before the plans could be realized. To counter the Disbursing Agent, the defendants point to a letter dated May 4, 1981—more than five months prior to Alla's bankruptcy—by J. Richard Knop, one of Alla's principals, in which Knop states the following concerning Alla's relationship with Steag:

> For the past six months we [Alla] have been operating our trading activities as a joint venture with them [Steag]. They have provided considerable financing for our coal export activities and have not and will not charge any interest for Steag financing. They have also arranged for performance bonds, letters of credit and other financial instruments that have been essential in developing new markets.

Memorandum from J. Richard Knop, Esquire, to H.C. Sleigh, Ltd. (May 4, 1981). Despite the Disbursing Agent's caveat that Knop's Memorandum must be read in the light of its purpose—to attract H.C. Sleigh, Ltd. as an investor in Alla—the Memorandum at the very least raises a doubt as to whether Alla truly had an "interest" in the letters of credit opened by Steag.

Closely related to the joint venture argument is the contention that Alla had no interest in the letters of credit because it had no practical control over their application. The defendants claim that the letters

---

**3.** The Disbursing Agent has offered copies of the "Master Sales Agreement" and the "Master Purchase Agreement" into evidence as exhibits to his memoranda of law in these cases.

were "earmarked" for Alla's suppliers: each letter corresponded to a particular supply contract between a defendant and Alla; each required documents that only the supplier could produce; each was in an amount approximately equal to the price agreed upon between Alla and the supplier, leaving no excess amount for Alla to draw on as profit; and each was in fact transferred by Alla to the supplier soon after Alla received it.

■■■ If a debtor has such control over a third party's funds that they are available for payment to the debtor's creditors generally, the funds become property of the estate and can be preferentially transferred. *In re Jaggers,* 48 B.R. 33, 36–37 (Bankr.W.D.Texas 1985). It follows that if a third party's funds are available only to pay a specific debt and the funds are in fact so applied, there is no dimunition of the estate and no preference. *Hoffer v. Marine Midland Trust Co. of New York,* 294 F.Supp. 187, 189 (S.D.N.Y.1968). This is so because the debtor would not have received the funds but for the understanding that they would be turned over forthwith to a particular creditor. *Id.; see also In re Hearn,* 49 B.R. 143, 145 (Bankr. W.D.Ky.1985) (funds earmarked by agreement were not property of the estate subject to avoidance).

■■■ The defendants' theories are plausible under well established principles of law and supported, though admittedly far from proven, by the evidence. Because of the issues of material fact raised by the defendants regarding Alla's "interest" in the letters of credit under section 547, the Disbursing Agent cannot prevail in the instant summary judgment motions.

## II. The Defendants' Motions for Summary Judgment.

We then turn to consideration of the defendants' motions for summary judgment. The Court will view the evidence in the light most favorable to the Disbursing Agent and assume *arguendo* that Alla had an interest in the letters of credit opened by Steag. The transactions which the Disbursing Agent challenges as preferential transfers, however, are the payments of funds by Commerzbank to the defendants under authority of the letters of credit. To establish these payments as preferential, the Disbursing Agent must show that Alla held an interest in these funds in addition to holding an interest in the letters through which the funds were drawn.

If Alla had an interest in the funds, then Commerzbank's payment of funds pursuant to the terms of each letter could be a "transfer" under section 547 of the Code. This transfer would be on account of an antecedent debt incurred much earlier, when coal was loaded on to rail-cars by the supplier and identified to the contract.[4] If Alla held no interest in the funds, their payment to the defendants cannot be a "transfer" within the terms of section 547. The threshold issue thus may be cast in simple terms: when did a transfer addressed by section 547 take place?

The importance of the theory of the Disbursing Agent that the payments were transfers of property in which Alla held an interest cannot be overstated. If Alla held no interest in the funds, only the transfers to the defendants of the letters of credit would remain as possible preferential transfers. Many of these transfers did not take place during the preference period. Moreover, the defendants asserted both "contemporaneous exchange" and "ordinary course of business" defenses with respect to the transfers of the letters.

Because we find that under established law governing letter of credit transactions Alla held no interest in funds paid under the terms of the letters, we reject the Disbursing Agent's characterization of these payments as transfers cognizable under section 547.

---

4. Following oral argument on September 18, 1985, the Court ruled that the debts were incurred when the coal was loaded on coal cars for shipment by the defendants, which is when Alla obtained an identifiable property interest in the coal. *See In re General Office Wholesalers,* 37 B.R. 180, 182 (Bankr.E.D.Va.1984).

The Disbursing Agent claims that the cash received by the defendants was Alla's property because it served to reduce Steag's debt to Alla. He also claims that the transfers by Commerzbank depleted Alla's estate because they reduced Alla's claims against Steag *pro rata,* claims that could have been pressed for the benefit of all creditors. Consequently, Alla held an interest in the funds obtained by the defendants pursuant to the letters of credit.

The Disbursing Agent argues that the transfers of the letters themselves were not transfers "of an interest of the debtor in property" within section 547 of the Code under the mandate of section 547(e)(3): "For the purposes of this section [547], a transfer is not made until the debtor has acquired rights in the property transferred." Section 547(e)(3) precludes a finding that the transfers of the letters are transfers within section 547, asserts the Disbursing Agent, because the original purpose for each of the letters of credit was to pay Alla for the coal it was to deliver for transport to shipboard. Accordingly, had Alla retained the letters instead of transferring them to the defendants, it would not have become entitled to draw cash under the letters—i.e., it would not have "acquired rights in the property"—until it had performed its contract with Steag and presented the documents required by the letters of credit to evidence that performance. The transfers of the letters long antedate the presentation of documents that the Disbursing Agent argues marked the debtor's acquisition of rights in the property. The Disbursing Agent concludes that because the transfers of the letters cannot satisfy the standard set forth in section 547(e)(3), the transfers of funds are the transfers cognizable under section 547.

The Disbursing Agent's argument ignores the unique nature of letters of credit. The beneficiary of a letter of credit has both the right to perform (here, to present documents) and the right to receive cash following performance. If Alla simply had assigned its rights in the proceeds of the letters of credit, then the Disbursing Agent's argument could be well taken. Alla would not have acquired rights in the proceeds until after it had performed; a prior transfer of the proceeds would not have become effective until that time. 11 U.S.C. § 547(e)(3). In each of the instant cases, however, Alla transferred the letters themselves, not the proceeds.[5] Alla did not merely arrange by way of assignment to have funds of its own paid directly to the defendants.[6] The defendants' rights to the funds they received were not derivative, not dependent on Alla's performance. A transfer of a letter of credit shifts the beneficiary's burdens as well as his benefits. *See* U.C.C. § 5–116 comment 1; 9 L. Weeramantry, et al., *Banking Law* § 237.07, at 237–16 (1986).

Professors White and Summers provide an illustration of how a seller-beneficiary like Alla can employ section 5–116(1) of the Uniform Commercial Code to transfer his benefits and burdens under a letter of credit to his supplier as a means of financing the purchase:

> The ... beneficiary's supplier might be willing to step into the beneficiary's shoes. That is, he might be willing to assume both the burdens and the benefits of the seller-beneficiary's status under the letters of credit (as distinguished from his contract for the sale of goods to the ... buyer). Thus the supplier would assume the seller-beneficiary's duty to procure and present the necessary documents called for by the terms of the letter of credit and would also acquire

---

5. The transfers are evidenced by an "Irrevocable Letter of Transfer" issued by Commerzbank's New York branch to each defendant stating the amount of the transfer and the conditions required to be met by the defendant before Commerzbank's obligation to pay would arise.

6. The distinction between "transfer" and "assignment" has been described as follows: "[T]he term 'transfer' connotes a substitution of a third party for the beneficiary; the term 'assignment' connotes an alienation by the beneficiary of that to which he is entitled upon performance by him of the terms of the credit." H. Harfield, *Letters of Credit* 96 (1979).

the beneficiary's right to draw drafts under the letter of credit and receive payment from the issuer.

J. White & R. Summers, *Uniform Commercial Code* § 18–9, at 748 (2d ed. 1980). The authors contrast a transfer of the letter of credit itself with an assignment of the proceeds: "Observe that the beneficiary's mere assignment of his right to proceeds is not a delegation by the beneficiary of his burdens, that is, of his duties to procure proper documents called for by the terms of the letter of credit." *Id.* at 750.

When Alla transferred each letter of credit, it transferred the valuable present right that it had as beneficiary to present documents to Commerzbank for payment. Thus, the requirements of section 547(e)(3) were satisfied. Furthermore, section 101 of the Code defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property...." 11 U.S.C. § 101(41) (1983). The Comment to section 101 explains that subsection 41 "is intended to define transfer as broadly as possible." 11 U.S.C. § 101 comment (1983). *See also Pirie v. Chicago Title & Trust Co.*, 182 U.S. 438, 443, 21 S.Ct. 906, 908, 45 L.Ed. 1171 (1901) ("transfer of property includes the giving or conveying [of] anything of value,—anything which has debt-paying or debt-securing power"). The statutory language of sections 101(41) and 547(e)(3) militates in favor of the earliest possible date for transfer.

The Disbursing Agent concedes that after transferring the letters Alla retained no legal, enforceable rights to draw any of the funds that the defendants ultimately received.[7] Nevertheless, the Disbursing Agent claims that Alla retained certain rights or interests in the proceeds because of its underlying contract with Steag. Doubtless, Alla was interested in seeing that the defendant-suppliers received the proceeds that were due because, as will be shown, Alla was secondarily liable on Commerzbank's obligation. The fact remains that Alla retained no "interest" in the proceeds within the meaning of section 547.

■ What the Disbursing Agent refuses to acknowledge is that the introduction of a letter of credit into a sale-of-goods transaction fundamentally alters the relationship between the parties. The defining characteristics of letters of credit compel the conclusion that Alla had no interest, legal or otherwise, in the proceeds received by the defendants under the transferred letters of credit. Once Alla irrevocably transferred its rights and duties as beneficiary, Commerzbank became primarily liable to pay the transferee according to the terms of the letter. *See Federal Deposit Insurance Corp. v. Philadelphia Gear Corp.*, —— U.S. ——, 106 S.Ct. 1931, 90 L.Ed.2d 428 (1986) ("A conventional 'commercial' letter of credit, in contrast [to a 'standby' letter], is one in which the seller obtains payment from the issuing bank without looking to the buyer for payment even in the first instance."). Those terms, of course, reflected the material terms of the coal supply contract—the required documents were to provide evidence that conforming coal in the amounts agreed upon had been shipped and delivered on time.

■ The transfer of the letter did not only provide a convenient arrangement for payment, but by law it suspended Alla's duty to pay the supplier. U.C.C. § 2–325(2). Commerzbank was not a guarantor of Alla's obligation. *See* J. White & R. Summers, *Uniform Commercial Code* § 18–2, at 713–15 (2d ed. 1980). Alla's duty to pay would revive only if (1) the letter of credit were dishonored by Commerzbank and (2) the seller gave Alla reasonable notice that it intended to demand direct payment from Alla. *See* U.C.C. § 2–325(2) comment 1. In all of the cases under ad-

---

7. The Disbursing Agent correctly points out that under Article 46(f) of the *Uniform Customs and Practice for Documentary Credits* (1974 Revision), Alla retained as transferor the right to present documents and draw down the differ- ence between what the transferee was entitled to and what was left of the credit. However, this theoretical right would in no way have given Alla the right to substitute itself for the transferee.

visement, Commerzbank honored the defendants' drafts. Alla's suspended obligation to pay never revived after delivery of the letters of credit. Delivery alone proved to be all that was required of Alla.[8]

▮ Once it is understood that Commerzbank was primarily liable on Alla's debts to the defendants pursuant to the letters of credit, it becomes clear that the letter of credit proceeds received by the defendants were Commerzbank's property, not Alla's. The Disbursing Agent cannot avoid a transfer of non-debtor property. *See, e.g., In re Illinois-California Express, Inc.,* 50 B.R. 232, 240 (Bankr.D.Colo.1985).

There is little case law on the subject of letter of credit fund transfers as preferences. The few courts that have addressed the subject, however, support the view that pre-petition transfers of proceeds to beneficiaries of letters of credit are not voidable preferences. The court in *In re Clothes, Inc.,* 35 B.R. 487 (Bankr.N.D.1983) was faced with a situation where the issuing bank honored a sight draft drawn under a letter of credit after an involuntary chapter 7 petition had been filed against the debtor but before an order for relief was entered. 35 B.R. at 488. The beneficiary was entitled to draw under the stand-by letter of credit because the debtor had failed to pay various debts owed to the beneficiary. *Id.* The trustee sought to avoid the payment to the beneficiary as a preferential payment. *Id.* The court granted the beneficiary-defendant's motion for summary judgment:

> The beneficiary of a letter of credit does not, in this Court's opinion, receive a preference.
>
> It is the opinion of this Court that by cashing the letter of credit, the Bank expended its own funds and not those of the Debtor's estate. Accordingly, the transfer is not subject to either § 362 or § 547 of the Bankruptcy Code.

*Id.* at 489. *Accord In re Price Chopper Supermarkets, Inc.,* 40 B.R. 816, 818–19 (Bankr.S.D.Cal.1984).

Further support is found in the case of *In re Illinois-California Express, Inc.,* 50 B.R. 232 (Bankr.D.Colo.1985) in an opinion released the day before the first day of oral argument in the instant cases. The debtor had entered into an agreement with several banks to issue letters of credit in favor of the defendant insurance company, which was thereby empowered to draw on the letters in order to satisfy claims filed against the debtor by third parties. 50 B.R. at 233. The trustee sought to avoid pre-petition draws on the letters of credit as preferential transfers. *Id.*

The court granted the defendant's motion to dismiss, holding that the transfers made by the banks pursuant to the letters of credit were not made from property of the estate. *Id.* at 240. The proceeds came from the banks' assets, and "[t]he Bankruptcy Court's jurisdiction does not extend to control property in which the debtor has no property interest." *Id.*

There is no apparent reason why the reasoning in *Illinois-California Express, Inc.* should not control the instant cases. The defendants at bar drew on transferred letters of credit, but the beneficiary of a transferred letter stands in a position no different from that of the beneficiary under an original letter for the purposes of the present analysis.

*Perlstein v. Ore & Chemical Corp.,* (D.D.C.Mar. 30, 1984) does not compel a conclusion contrary to that indicated by *Illinois-California Express, Inc., supra.* The Disbursing Agent infers that *Ore & Chemical* provides incontrovertible proof that the letter of credit proceeds were Alla's property. However, a close reading of Judge Gerhard A. Gesell's opinion shows that the holding of the case is not nearly so extensive.

---

**8.** It is not the holding of this Court that mere delivery of a letter of credit effects payment or satisfaction of the contract debt, but rather that delivery of a letter of credit constitutes a completed "transfer" under section 547(b). "Trans-

fer" is not synonymous with "payment"; for example, although the granting of a perfected security interest does not pay a debt it nevertheless constitutes a transfer under the preference and avoidance sections of the Code.

In *Ore & Chemical,* the court denied the defendant's summary judgment motion in a preference action based on facts virtually identical to those in the cases at hand. Ore & Chemical Corporation ("Ore & Chemical") had moved for summary judgment in reliance on Judge Gesell's earlier opinion in *In re Page,* 18 B.R. 713 (D.D.C.1982), asserting that *Page* was directly analogous and mandated the conclusion that the letter of credit proceeds were not Alla's property.

Ore & Chemical's motion was correctly denied. Although *Page* involved a letter of credit, it was otherwise distinguishable. *Page* arose from a creditor's post-petition attempt to cash a letter of credit it held as partial security for a loan extended to the debtors. 18 B.R. at 714. The day after a draft was presented to the bank, the debtors sought an injunction to prohibit the bank from honoring the draft. *Id.* at 714–15. The Bankruptcy Court granted the injunction, reasoning that cashing the letter would violate section 362(a) of the Code; section 362(a) provides that the filing of a petition in bankruptcy stays "any act to obtain possession of property of the estate" and "any act to create, perfect, or enforce a lien against property of the estate." *Id.* at 715.

The District Court reversed, holding that "[a]lthough cashing the letter will immediately give rise to a claim by the Bank against the debtors pursuant to the latter's [sic] indemnification obligations, that claim will not divest the debtors of any property since any attempt to enforce that claim would be subject to an automatic stay pursuant to 11 U.S.C. § 362(a)(4)." 18 B.R. at 715–16 (footnote omitted). Cashing the letter of credit would constitute a transfer of the bank's property, not the debtors'. *Id.* at 715.

*Page* differed from *Ore & Chemical* because the documentary letter of credit in *Ore & Chemical* was intended as a medium of direct payment rather than as a stand-by letter of credit for security. The complaint in *Ore & Chemical* alleged a pre-petition preferential transfer, not a post-petition violation of the automatic stay. Further-

more, in *Ore & Chemical* the District Court did not even reach the issue the Disbursing Agent now claims that it ruled upon in his favor. After characterizing *Page* as a case concerning "the rights of one directly guaranteed by letter of credit to hold the bank to *its* obligation," the court pointed out that the Ore & Chemical case "on the other hand, does not even involve the *bank's* obligation to [Ore & Chemical]." Slip op. at 4 (emphasis in original). Rather, the Disbursing Agent's action against Ore & Chemical *"apparently* involves only return of cash belonging to Alla which Alla allowed the bank to turn over directly to [Ore & Chemical]." *Id.* (emphasis added).

The importance of the qualifier "apparently" cannot be over-emphasized. In *Ore & Chemical,* the court did not rule that the letter-of-credit proceeds paid to Ore & Chemical by Commerzbank constituted Alla's property. It used the above-quoted *dictum* only to contrast the case before it more sharply with *Page.* It based its ultimate ruling on the fact that *Page* was not factually on point. To so rule, it was not necessary to find that the cash paid out by Commerzbank was Alla's property for purposes of section 547(b) of the Code. In fact, the court explicitly did not so find: "Resolution of the issues raised [by the motion for summary judgment] should proceed in the Bankruptcy Court in normal course and in light of further facts which may be developed under [the preference claim]." *Ore & Chemical,* slip op. at 4. *See Gould v. Mossinghoff,* 711 F.2d 396, 398 (D.C.Cir.1983) ("the doctrine of collateral estoppel bars relitigation only of issues actually determined in prior litigation").

*Ore & Chemical* should be read in the context of the jurisdictional uncertainties created by *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The reason the District Court had the *Ore & Chemical* case before it was because the Disbursing Agent had sought to preserve his rights in the event the Bankruptcy Court, where he had filed his

preference action against Ore & Chemical, was stripped of its power to adjudicate the action. The District Court's holding in *Ore & Chemical* served to maintain the status quo between the litigants so that the action could proceed in the Bankruptcy Court in normal course. The unpublished opinion in *Ore & Chemical* should be limited to its substantive holding, which, as is clear from the order accompanying the opinion, was intended only to determine the non-applicability of *Page.* The text of the order reads in full:

> For the reasons stated in the Court's Memorandum filed herewith, defendant's motion for summary judgment as to Count II of the complaint based on *In re Page,* 18 B.R. 713 (D.D.C.1982), is denied, and further matters relating to Count II are to be resolved by the Bankruptcy Court subject to the conditions of the dismissal Order [without prejudice to the right of the parties to reopen the matter in the District Court in the event that the Bankruptcy Court were to lose its jurisdiction] entered this day.
> SO ORDERED.

Order filed March 30, 1984. Again, the court did nothing more than deny Ore & Chemical's motion, which had in the court's view raised a single issue. The court's succinct opinion does not attempt to identify and state abstract principles of law applicable to cases beyond the one before it.

The instant cases are well suited for summary judgment. No disputes of fact surround the transfer issue. The letters of credit and the transfers are in evidence and speak for themselves. Similarly, the dates that these letters were issued and transferred are uncontested.

▆▆▆▆ Because the relevant transfers under section 547(b) of the Code were the transfers of the letters of credit, the defendants' motions for summary judgment must be granted. In the case of Pilgrim Coal Sales Corp. and Raintree Coal Co., the sole transfers occurred prior to the 90–day preference period. Similarly, of the transfers received by Tycoal, Inc., two were effected prior to the preference period. Any transfers received by any of the defendants during the preference period but prior to shipment of the coal would not be preferential because the transfers would not have been on account of antecedent debts. *See* 11 U.S.C. § 547(b)(2). Finally, the letter-of-credit transfers at issue here that satisfy otherwise all six elements of a preference are nevertheless insulated from avoidance because they fall within the "ordinary course of business" exception to the Disbursing Agent's avoiding powers.

The ordinary course exception protects transfers that were

> (A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

> (B) made not later than 45 days after such debt was incurred; [9]

> (C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

> (D) made according to ordinary business terms[.]

11 U.S.C. § 547(c)(2) (1983). Each of the elements of the ordinary course exception must be satisfied for the exception to apply. *In re General Office Furniture Wholesalers, Inc.,* 37 B.R. 180, 183 (Bankr. E.D.Va.1984). Each element is in fact satisfied with respect to each of the relevant transfers. There can be no question that the first element was present: the debtor's ordinary business was the purchase of coal, and the defendants' ordinary business was to supply coal. The second element was satisfied because each of the letter-of-credit transfers occurred within 45 days of the date the relevant debts were incurred—in fact, in several cases the transfers were made roughly contemporaneously with the

---

**9.** The 45–day requirement was deleted by the Bankruptcy Amendments and Federal Judgeship Act of 1984.

shipments of coal themselves.[10] The third and fourth elements have been met as well. The use of letters of credit was certainly within the ordinary course of Alla's financial affairs; the defendants now before the court are only a few of the many coal suppliers who received letters of credit from Alla. The use of letters of credit can also be deemed within the ordinary course of each defendant's financial affairs. It is immaterial that a particular defendant's first experience with letters of credit might have been with Alla. Letters of credit are not unusual for payment when the parties are dealing with each other for the first time, especially when the sales transaction is international. *See, e.g.,* McLaughlin, *Letters of Credit as Preferential Transfers in Bankruptcy,* 50 Fordham L.Rev. 1033, 1036 (1983). The Disbursing Agent argues that the instant sales transactions between Alla and the defendants were domestic though the coal's ultimate destination was Europe. Even so, the use of letters of credit is not necessarily unusual in a domestic sale-of-goods transaction. *See, e.g.,* J. White & R. Summers, *Uniform Commercial Code* § 18–10, at 752 (2d ed. 1980) ("the utility of letters of credit as financing devices is not confined to the international sphere"); 9 L. Weeramantry, et al., *Banking Law* § 230.01, at 230–1 (1986) ("Letters of Credit were increasingly used in domestic and non-sales transactions [after the 1974 revision of the *Uniform Customs and Practices for Documentary Credits*].").

Each defendant need not have been in the habit of accepting letters of credit in order for the ordinary course exception to apply to the instant transfers. The third and fourth elements of section 547(c)(2) are intended to further the legislative purpose of section 547 itself "to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." H.R. No. 595, 95th Cong., 1st Sess. 373 (1977), U.S. Code Cong & Admin. News 1978, p. 6329. The defendants need not show that letters of credit are routine for domestic coal sales in order to show compliance with section 547(c)(2). The District Court for the District of South Carolina explains that the requirements of the ordinary course exception "should usually be easy to meet":

> Since [showing that the transaction was conducted in the ordinary course of business] is required merely to assure that neither the debtor nor the creditor do anything abnormal to gain an advantage over other creditors, an extensive showing that such transactions occurred often, or even regularly, is not necessary. *The transaction need not have been common; it need only be ordinary. A transaction can be ordinary and still occur only occasionally.*

*In re Economy Milling Co., Inc.,* 37 B.R. 914, 922 (D.S.C.1983) (emphasis added). The court further stated that a creditor can meet his burden under section 547(c)(2) by showing that he or other creditors like him previously entered into similar transactions with the debtor. *Id.* By this test, any one of the defendants in the cases at bar need only point to its co-defendants. For example, although a particular defendant might not be able to show that it accepted letters of credit for coal before agreeing to do business with Alla, it certainly could show that other suppliers like it in the industry had entered into similar transactions with the debtor. Under *Economy Milling, supra,* the latter showing is sufficient.[11]

Granting summary judgment in favor of the defendants comports with the legisla-

---

**10.** Section 547(c)(1) provides an exception for a "contemporaneous exchange," but establishing the application of the exception requires proof of intent on the part of both the debtor and the creditor. Intent is an issue of fact more suitable for resolution at trial than on a motion for summary judgment. *See, e.g., In re T.I. Swartz Clothiers, Inc.,* 15 B.R. 590, 593–94 (Bankr.E.D. Va.1981).

**11.** Because section 547(c)(2) excepts all of the letter-of-credit transfers at issue from avoidance, there is no need to consider the other statutory and equitable defenses raised by various defendants.

tive purpose informing the preference and avoidance sections of the Code. Neither the transfers of the letters of credit nor the disbursements of cash pursuant to the transferred letters constituted unusual acts to favor the defendants impermissibly over other unsecured creditors.[12] Furthermore, ruling in favor of the defendants is in accord with general policies in favor of facilitating commerce and maintaining the strength of the letter of credit as a national and international financing device. If the payment made by the issuing bank pursuant to a letter of credit were to be avoidable as a preferential transfer, it would have a chilling effect upon letters of credit and in effect place an undesirable restraint on trade. To support this position, Professor Gerald T. McLaughlin offers a compelling argument in his well-reasoned law review article on letters of credit and preference law:

> To accommodate both letter of credit and preference policy, the bank's payment to the beneficiary ... should be immunized from preference attack. The very hallmark of the letter of credit has been the irrevocable nature of this payment obligation. Because the bank's obligation is irrevocable, the letter of credit places the risk of customer insolvency on the bank, not on the beneficiary. To permit the trustee to avoid the bank's payment as a preference essentially destroys the usefulness of the letter of credit. By avoiding the bank's payment, the risk of customer insolvency is placed back on the beneficiary.

McLaughlin, *Letters of Credit as Preferential Transfers in Bankruptcy*, 50 Fordham L.Rev. 1033, 1084 (1982) (footnotes omitted).

Letters of credit necessarily have become commercial fixtures because they substitute a bank's financial strength for a purchaser's less-certain ability to pay. The Court's holding in the cases at bar is in accord with long-established business practices involving letters of credit. It is also in accord with widely held concepts concerning these financial instruments. The New York Court of Appeals has stated that "a provision for a letter of credit in a contract of sale is intended to provide complete assurance to the seller that he will be paid whenever he complies with the terms of the contract." *Shirai v. Blum*, 239 N.Y. 172, 146 N.E. 194, 196 (1924). To accept the Disbursing Agent's position "would inject an element of uncertainty in a long-standing commercial practice designed to eliminate uncertainty." *Price Chopper Supermarkets, supra*, 40 B.R. at 819.

An appropriate order denying the Disbursing Agent's motion for summary judgment and, where applicable, granting the defendant's motion will be entered in each of the above-captioned cases.

---

**12.** For reasons unknown, Lambert Coal Co. received a wire transfer instead of a letter of credit in payment for its final shipment of coal to Alla. Although this $37,380.35 transfer was received within forty-five days of the date the debt was incurred, it was not made in conformance with the established course of dealing between the parties. *See In re Craig Oil Co.*, 785 F.2d 1563, 14 Bankr.Ct.Dec. (CRR) 553, 555–57 (11th Cir.1986) (payment by cashier's check following a history of payment by corporate check was not in the ordinary course of business or according to ordinary business terms). Additionally, the Court notes that the transfer was received on October 19, 1981, just eighteen days before Alla's bankruptcy. Because the circumstances surrounding this payment have not been adequately explored, judgment as to the wire transfer is not appropriate at this time.

Similarly, the Court is unable to rule at this time on payments received by Raintree Coal Co. pursuant to letters of credit, because Raintree Coal failed to file a motion for summary judgment against the Disbursing Agent.