In re STEELVEST, INC., Debtor.

STEELVEST, INC., Plaintiff,

v.

FRANK MESSER AND SONS
CONSTRUCTION COMPANY,
et al., Defendants.

Bankruptcy No. 3–87–03060(11).
Adv. P. No. 3–88–0002.

United States Bankruptcy Court,
W.D. Kentucky.

March 8, 1990. ·

John W. Ames and Stephen E. Smith, Louisville, Ky., for Steelvest, Inc.

Joseph J. Golden, Louisville, Ky., Asst. U.S. Trustee.

David B. Blanford, Louisville, Ky., for Consolidated Systems, Inc.

Joseph A. Hammer, Louisville, Ky., for Engineered Products.

James P. Willett, III, Bardstown, Ky., for Midwest Joist Division.

## MEMORANDUM OPINION

HENRY H. DICKINSON, Bankruptcy Judge.

Trial was due to commence on the above-styled adversary proceeding on January 26, 1990. During a status conference scheduled on January 16, 1990, the parties requested that oral arguments be heard on January 26, 1990, in lieu of trial. At the conclusion of oral arguments, the Court took the matter under submission.

The material facts are not in dispute and may be briefly summarized as follows.

### FACTS

Frank Messer and Sons Construction Company (hereinafter "Messer") was the general contractor for the Training Center (hereinafter "project") located at the Toyota Manufacturing facility in Scott County, Kentucky.

On March 9, 1987, Messer entered into a Materials Agreement with Steel Fabrica-

tors, Inc. (hereinafter "Steel Fabricators") whereby Steel Fabricators agreed to furnish materials required for the project. Prior to entering into the above agreement, Steel Fabricators made arrangements with Consolidated Systems, Inc. (hereinafter "Consolidated") to furnish structural steel and related materials to the project. As a condition precedent to furnishing materials, Consolidated required that Messer make payment by means of a joint check payable to both Steel Fabricators and Consolidated. On March 5, 1987, Steel Fabricators, Messer & Consolidated entered into a joint check agreement.[1]

Thereafter Consolidated began shipping materials to the project as required by Steel Fabricators. During the month of June 1987, Consolidated invoiced Steel Fabricators and Messer for materials furnished totalling $63,500.00.

On July 9, 1987, Messer issued joint checks to several vendors which had provided materials and labor on the project but Consolidated was not among them. Several weeks later, Messer learned that Steelvest had not endorsed or forwarded the checks to the vendors as agreed. Thereafter, Messer physically repossessed the checks.

In August 1987, Messer first became aware of difficulties Steel Fabricators was having in performing under the contract. According to Mr. Verlden Campbell, project manager for Messer, Steel Fabricators was having trouble delivering metal fabrication to the job site as scheduled. Messer also became concerned over the number of unpaid suppliers who could be in a position to claim materialman liens or assert claims against Messer under its payment bond.

Therefore, on September 15, 1987, Mr. Campbell, by letter to Steel Fabricators, requested that Messer be authorized to issue checks directly to the suppliers as soon as possible. Mr. Bill Lucas, president of Steel Fabricators, responded that as soon as back charges and setoffs relating to the project were resolved, he would authorize

payment to Consolidated and other suppliers.

A meeting was held at the job site on October 13, 1987 to review the accounts currently due and owing by Steel Fabricators. Mssrs. Bill Lucas, Verldon Campbell and Darrell Horsley, the field project manager for Messer, attended the meeting. At the conclusion of the meeting, Bill Lucus agreed to authorize payment to certain suppliers. Again, Consolidated was not among the suppliers so authorized. Thereafter on November 3, 1987, Messer issued direct checks to the suppliers, including Consolidated, and obtained a release and indemnity agreement from all. Although Messer was obligated under the joint check agreement to issue the checks jointly with Steel Fabricators, it issued the checks directly to the individual suppliers.

A few days later, on November 13, 1987, Steelvest filed a petition for relief under Chapter 11 of the Bankruptcy Code. The above-styled adversary proceeding followed with Steelvest seaking to avoid as preferences the transfers of funds to the suppliers pursuant to 11 U.S.C. § 547(b).

The issue before the Court is whether Messer's transfer of funds in the amount of $60,095.41 to Consolidated within 90 days prior to Steelvest's bankruptcy filing constitutes a voidable preference.

Generally, 11 U.S.C. § 547 allows the trustee to avoid a transfer made by a debtor of his property to a creditor on account of an antecedent debt within 90 days of filing bankruptcy enabling the creditor to receive more than it would have had the debtor liquidated under Chapter 7. Section 547 provides, in pertinent part:

(b) except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

---

1. Several other joint check agreements were signed by Messer and Steel Fabricators to other vendors on this project.

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of filing of the petition, if such creditor at the time of such transfer was an insider;

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Initially the trustee has the burden of proving the avoidability of the preference by establishing that all elements under § 547(b) are present. Each element must be proven by a fair preponderance of the evidence. 4 Collier on Bankruptcy ¶ 547.01 (15th ed. 1989). Although 11 U.S.C. § 547 merely places avoidance power upon the trustee, the debtor-in-possession stands in the shoes of a trustee and is bestowed all the rights and the duties of a trustee. *See,* 11 U.S.C. § 1107. Accordingly, Steelvest as the debtor-in-possesion, has standing to avoid the transfer once its burden of proof has been met.

■ It is undisputed that: (1) Steelvest was insolvent when the transfer was made to Consolidated; (2) the transfer occurred within 90 days prior to the filing of Steelvest's bankruptcy petition and (3) the transfer was for and on account of an antecedent debt owed by Steelvest to Consolidated. However, the parties remain divided on whether the funds transferred constituted "interest of the debtor in property" within the meaning of 11 U.S.C. § 547(b). Since the Bankruptcy Code fails to define the term "interest of the debtor in property", we must look to case law to determine whether Steelvest possessed an interest in the contract proceeds.

Steelvest maintains that although a joint check agreement was entered into between the parties, it never relinquished total control over the contract funds. This position, Steelvest contends, is evidenced by letters and correspondence between the parties, whereby Messer continually asked Steelvest for authorization to pay the suppliers. After the meeting at the job site in October 1987, Messer again asked Steelvest for permission to pay Consolidated before the checks were actually paid in November. Therefore by the very existence of the above correspondence, Steelvest contends that it maintained control over the contract funds.

Consolidated, in contrast, argues that Steelvest had no interest in the funds upon the execution of the joint check agreement because it had no "effective control" over the application of the funds. Consolidated claims that Steelvest had no right to use funds resulting from materials delivered by Consolidated, to pay its other creditors. Accordingly, Steelvest did not have a sufficient property interest in the funds to give rise to a preferential claim. In support thereof, Consolidated cites the case of *In re AOV Industries, Inc.,* 64 B.R. 933 (Bankr. D.Dist.Col.1986), wherein the court stated that:

If a debtor has such control over a third party's funds that they are available for payment to the debtor's creditors generally, the funds become property of the estate and can be preferentially transferred (citation omitted). It follows that if a third party's funds are available only to pay a specific debt and the funds are in fact so applied, there is no diminution of the estate and no preference (citation omitted). This is so because the debtor would not have received the funds but for the understanding that they would be turned over forthwith to a particular creditor (citation omitted).

*Id.* at 938.

Although the *AOV* court based its reasoning on the earmarking doctrine, a doctrine we previously ruled inapplicable in

this case,[2] we find that the underlying theory of "control" also governs the issue before this Court. In the current case, when Steelvest signed the joint check agreement with Messer and Consolidated, it effectively gave up control over the contract proceeds to the extent necessary to pay Consolidated. Admittedly, Steelvest's interest in the contract proceeds were purely administrative since Steelvest, by the very terms of the Materials Agreement, was obligated to verify proper performance before authorizing payment. However, Steelvest had no real interest in the funds because it had no right to use Consolidated's funds to pay other creditors. Accordingly, we find that Steelvest did not possess a sufficient interest in the contract proceeds to avoid the transfer as a preference.

 Assuming the theory of control does not govern the issue before the Court, there is other support for our conclusion. In the case of *In re Flooring Concepts, Inc.*, 37 B.R. 957 (Bankr. 9th Cir.1984), the Bankruptcy Appellate Panel found that payments made to a creditor of a bankrupt debtor were not property in which the debtor had an interest, where there was an independent obligation by the contractor to pay the creditor. *Id.* at 961 (citing *Keenan Pipe & Supply Co. v. Shields*, 241 F.2d 486 (9th Cir.1956). The Appellate Panel reasoned, again citing *Keenan, supra*, that where a contractor issued a joint check to a materialman and an insolvent subcontractor, no preference resulted since the general contractor had an independent contractual obligation to pay the materialman under the agreement. Moreover, payment was deemed proper and unavoidable because the materialman received payment directly in exchange for his forbearance to further pursue any lien remedies.

In the instant case, we find a similar situation. By way of the joint check agreement Messer had an independent contractual obligation to pay Consolidated and Steelvest. Moreover, Messer, as a condition of its contractual obligation with the project owner, executed a Labor and Material Payment Bond obligating both Messer, as principal and the United States Fidelity & Guaranty Company, as surety to make prompt payment for all labor and materials used on the project. Finally, upon receipt of payment, Consolidated gave up its rights to further pursue lien remedies under state law.

Accordingly, we find that Steelvest did not have a sufficient property interest in the contract funds transferred to Consolidated to give rise to a voidable preference claim.

An order consistent with this opinion shall be entered this day.

---

**2.** The earmarking doctrine is a well established defense to a preference action whereby a third party supplies *new funds* to pay off the debtor's old creditors. By opinion and order entered January 8, 1989 in *Steelvest Inc. v. Citizens Fidelity Bank Service Corp.*, we rejected this theory as inapplicable, since new funds were not involved.